[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 978 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 979 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 980 
Billy Leon Kearse appeals an order of the circuit court denying his motion to vacate his first-degree murder conviction and sentence of death, and also petitions this Court for a writ of habeas corpus. *Page 981 
We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. As we explain below, we affirm the circuit court's order and deny Kearse's petition.
 I. FACTS AND PROCEDURAL BACKGROUND
Kearse was convicted of robbery with a firearm and the first-degree murder of Fort Pierce police officer, Danny Parrish. On direct appeal, we summarized the facts of the crime as follows:
 After Parrish observed Kearse driving in the wrong direction on a one-way street, he called in the vehicle license number and stopped the vehicle. Kearse was unable to produce a driver's license, and instead gave Parrish several alias names that did not match any driver's license history. Parrish then ordered Kearse to exit the car and put his hands on top of the car. While Parrish was attempting to handcuff Kearse, a scuffle ensued, Kearse grabbed Parrish's weapon and fired fourteen shots. Thirteen of the shots struck Parrish, nine in his body and four in his bullet-proof vest. A taxi driver in the vicinity heard the shots, saw a dark blue vehicle occupied by a black male and female drive away from the scene, and called for assistance on the police officer's radio. Emergency personnel transported Parrish to the hospital where he died from the gunshot injuries.
 The police issued a be-on-the-lookout (BOLO) for a black male driving a dark blue 1979 Monte Carlo. By checking the license plate that Officer Parrish had called in, the police determined that the car was registered to an address in Fort Pierce. Kearse was arrested at that address. After being informed of his rights and waiving them, Kearse confessed that he shot Parrish during a struggle that ensued after the traffic stop.
Kearse v. State, 662 So.2d 677, 680 (Fla. 1995) (Kearse I). We affirmed as to Kearse's guilt phase claims, but remanded for a new penalty phase based on errors "relate[d] to the penalty phase instructions and the improper doubling of aggravating circumstances." Id. at 685.[1]
After the new penalty phase, the unanimous jury recommended death, and the trial court again sentenced Kearse to death.Kearse v. State, 770 So.2d 1119 (Fla. 2000) (KearseII), cert. denied, 532 U.S. 945, 121 S.Ct. 1411,149 L.Ed.2d 352 (2001). The trial court found in aggravation that the crime was committed in the course of a robbery, which it afforded "diminished" weight, and found three other aggravating factors that it merged into one — that the murder was committed to avoid arrest and to hinder law enforcement, and that the victim was a law enforcement officer engaged in official duties. The court found one statutory mitigating factor — the age of the defendant — and listed almost forty nonstatutory mitigators to which the court assigned some weight. On appeal, Kearse raised twenty-two issues. Id. at 1123.[2] We affirmed the death sentence. Id. at 1135. *Page 982 
Kearse subsequently filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.851, in which he raised several claims and subclaims.[3] The trial court held an evidentiary hearing on some of them, and subsequently denied relief on all claims.
 II. THE ISSUES ON APPEAL
Kearse raises the following four issues on appeal: (A) that trial counsel provided constitutionally ineffective assistance, (B) that the circuit court erred in denying Kearse's claim of newly discovered evidence warranting a new penalty phase, (C) that the trial court erred in denying Kearse's public records requests, and (D) that the trial court erred in summarily denying several of his postconviction claims. We address each in turn below.
 A. Ineffective Assistance of Counsel
Kearse first argues that he received ineffective assistance of counsel. In Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court established a two-pronged standard for determining whether counsel provided constitutionally ineffective assistance. *Page 983 
First, a defendant must point to specific acts or omissions of counsel that are "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. 2052. Second, the defendant must establish prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. Claims of ineffective assistance present mixed questions of law and fact subject to plenary review. Occhicone v. State, 768 So.2d 1037,1045 (Fla. 2000). This Court independently reviews the trial court's legal conclusions and defers to the trial court's findings of fact.
Kearse argues that his trial counsel was constitutionally ineffective for (1) failing vigorously to advocate for him, (2) failing adequately to prepare the defense experts, (3) failing to investigate and prepare for the State's mental health expert, (4) failing to present victim misconduct evidence, and (5) failing to prepare lay witnesses to testify
 1. Vigorous Advocacy
Kearse's claim that counsel did not sufficiently advocate for him is based largely on various statements made by his counsel during the guilt phase and resentencing, most of which the jury did not hear. Kearse has lifted many of the statements from their context and ascribed to them both importance and meaning not present when they are viewed in context. We agree with the trial court that, when viewed in context, the statements and arguments constitute defense counsel's candid representations to the court. Accordingly, Kearse has demonstrated neither deficiency nor prejudice.
Kearse's allegation that defense counsel did not understand the mental health issues at resentencing is similarly based on statements taken out of context. Defense counsel was an experienced death penalty attorney. He represented Kearse at the guilt phase and original sentencing and again at resentencing. At both sentencing proceedings, he presented the expert testimony of the same neuropsychologist, a number of professionals who had worked with Kearse when he was in a school for emotionally disturbed children, and family members. At the postconviction hearing, defense counsel testified that he understood the issues and was prepared at trial. We conclude that Kearse has failed to demonstrate either deficiency or prejudice.
 2. Preparation of Experts
Kearse first argues that defense counsel failed adequately to prepare Dr. Lipman, a neuropharmacologist, to testify by failing to provide him with necessary information and did not provide Dr. Lipman with the defense neuropsychologist's assistance in preparing part of an analysis in support of Dr. Lipman's testimony. Competent, substantial evidence supports the circuit court's finding that defense counsel provided Dr. Lipman with necessary materials. Further, Dr. Lipman testified at resentencing that counsel inundated him with information, and at the postconviction hearing testified that he would not change his testimony now that he had seen further information. Finally, Dr. Lipman testified that when he needed expert assistance, he simply consulted another neuropsychologist. Accordingly, Kearse failed to establish either deficiency or prejudice.
Kearse raises another ineffective assistance claim regarding Dr. Lipman's testimony. At the resentencing, Lipman *Page 984 
testified that Kearse suffered from fetal alcohol effect, explained Kearse's resulting neurodevelopmental problems, and related these factors to Kearse's actions on the day of the murder. Kearse alleges that Dr. Lipman was not qualified to testify regarding his consultations with other experts about Kearse's psychological testing. The resentencing record demonstrates, however, that as a neuropharmacologist, in making his diagnoses Dr. Lipman always relies on medical doctors and psychologists. We agree with the circuit court that Dr. Lipman was not barred from testifying about his reliance on other experts. Thus, Kearse fails to meet either requirement ofStrickland.
 3. Preparation for Expert Testimony
Kearse argues that defense counsel was ineffective for failing to depose and investigate Dr. Martell, the State's mental health expert, and was thus unprepared to cross-examine him. He also claims that counsel failed to present a number of mental health experts in mitigation. To address this claim, we first place it in context by summarizing the mitigation testimony presented at resentencing.
Dr. Fred Petrilla, a neuropsychologist, evaluated Kearse in 1991 and again in 1996 for the resentencing. Petrilla testified for the defense that although Kearse had an IQ of 79 and was not mentally retarded, he had moderate brain dysfunction. Kearse had auditory, concentration, and behavioral problems, and severe learning problems. Kearse also tended to be hyperactive and react impulsively when confronted, and he was culturally deprived. The expert concluded Kearse was not malingering on testing and that two statutory mitigators were supported: extreme emotional disturbance and because of emotional disturbance, Kearse was incapable of conforming his conduct to the requirements of the law.
Dr. Lipman testified that Kearse had neurodevelopmental problems from an early age due to his mother's alcohol abuse during pregnancy. This alcohol abuse caused Kearse to suffer from fetal alcohol effect (FAE), one of the effects of which is brain dysfunction. The expert testified that his finding of FAE is consistent with Kearse's hyperactivity, impulsivity, and slow physical and subnormal educational development and is consistent with the findings of other experts who tested Kearse, such as Dr. Petrilla. Further, Dr. Lipman testified that Kearse confabulated (i.e., rationalized what happened) in retelling the crime and thus was not "lying" about it. Dr. Lipman opined that at the time of the murder Kearse "exploded" without thought and did not kill the officer to avoid arrest. He also concluded that Kearse had a verbal memory disorder and was not malingering on the Minnesota Multiphasic Personality Inventory (MMPI).
Various teachers and school officials taught Kearse at a school for severely emotionally disturbed children, where Kearse was placed based on psychological evaluations. These education professionals testified that Kearse suffered from severe emotional dysfunction and functioned below grade level. Kearse had learning disabilities and was unable to master the skills of a normal student. He previously had failed in school, repeating the first and second grades twice and being socially promoted through several grades based solely on his age. At age fifteen, Kearse was in the seventh grade when he scored in the .8 percentile (i.e., the bottom one percent of all students) on the Wide Range Achievement Test. Functioning at a third-grade level, Kearse then dropped out at the end of that school year. The educators testified that Kearse had a genuine desire to learn, but was unsuccessful because of his *Page 985 
limitations, and over time Kearse became increasingly disruptive in school. Further, his mother's neglect was apparent. Kearse came to school dirty, hungry, unkempt, and malnourished. His mother failed to respond to school requests for information or consultation.
Kearse's relatives — two aunts, an uncle, and Kearse's mother — testified that Kearse's mother was fifteen when he was born, and that his mother drank excessively during and following the pregnancy. Kearse's father left when he was two, and his mother failed to show him affection and neglected him. She also physically abused him, and as he grew older, was unable to control him. Kearse was slow to develop both physically and emotionally. As a child, he had slurred speech and difficulty pronouncing words. He also was delayed in learning skills, such as tying his shoes. Kearse had difficulty understanding and following through on directions and had significant difficulties with school work. He frequently ran away for days at a time and lived on the street.
Pamela Baker, a licensed mental health counselor and at one time Kearse's teacher, first encountered Kearse in 1981 when at age eight he was referred to the Suspect Child Abuse and Neglect program. She testified regarding his documented school and psychological history and Kearse's home life. According to Baker, Kearse's mother neglected and frequently "whipped" him. At one time Kearse was reluctant to leave the youth home in which he was placed because he was fed better there. She said that Kearse was classified as severely emotionally disturbed and was placed in special classes. At age twelve, his approximate IQ was 69. He failed grade levels and was usually promoted socially based on age. Neurological testing in 1981 revealed that Kearse had problems related to brain damage, including poor memory, motor skills, and planning skills, an inability to do abstract thinking, and poor comprehension. His mental age was lower than his chronological age. She noted that Kearse became involved in smoking and drinking at an early age and committed petty thefts and burglaries, but there was little aggressive behavior involved in these crimes. Baker visited Kearse in prison and found that he had learned how to read and write while there. She further stated that Kearse exhibited symptoms of panic attacks and conduct disorder. Finally, she testified that although Kearse was sometimes a bully at school, he was not violent, and she never thought he would kill anyone.
The State presented Dr. Martell, who testified that neither statutory mental health mitigator applied, that FAE is not a mental disorder, and that Kearse had no brain damage. He opined that Kearse was depressed, which could account for Kearse's low verbal IQ, and that Kearse had a conduct disorder and chose not to apply himself in school. He opined that Kearse had an antisocial personality disorder and scored within the range for psychopathy. Further, Martell said that Kearse's MMPI results evidenced malingering. Martell concluded that Kearse is a pathological liar, who consciously shot the officer, took the gun with him because of the fingerprints, extinguished his head-lights to escape, and then lied to evade responsibility.
Having summarized the evidence at the resentencing, we now address Kearse's claim that defense counsel was deficient for failing to depose Dr. Martell, the State's mental health expert. The record shows that Dr. Martell examined Kearse on the Thursday before the resentencing proceedings began the following Monday, and that defense counsel's motion for a continuance was denied. Upon receipt of *Page 986 
Dr. Martell's raw data and report, defense counsel forwarded these to his experts and consulted with them about the information. He also consulted the state attorney regarding Martell's upcoming testimony. At the postconviction hearing, defense counsel testified that despite not having deposed Martell, he knew what Dr. Martell's testimony would be regarding statutory mitigators, what his test results supposedly revealed, and where Martell's testimony would differ from his own experts' testimony. As evidenced from the foregoing summary, the evidence shows that Udell correctly anticipated Martell's testimony. Kearse thus has not demonstrated anything material that defense counsel did not anticipate or could have done differently had he deposed Dr. Martell.
Kearse also claims that defense counsel should have presented more mitigation or chosen different experts. This claim simply ignores the extensive mental health mitigation outlined above that was presented at resentencing through a psychologist, a neuropharmacologist, a licensed mental health counselor, several educators, and family members. Further, as the trial court pointed out, and Kearse does not dispute, Kearse's experts at the postconviction hearing largely testified in conformity with the testimony defense counsel presented at the resentencing. We can think of no other case — and Kearse has not cited one — in which defense counsel has presented so much expert testimony and other mitigation, but has been found ineffective for failure to present mitigation.[4] Accordingly, we hold that Kearse's claim fails to meet Strickland's
requirements.
 4. Failure to Investigate and Present Victim Misconduct Evidence
Kearse next claims that defense counsel was ineffective for insufficiently investigating and by failing to use a mitigation strategy to vilify the victim. Kearse argues that evidence of Officer Parrish's prior misconduct suggested that he provoked the incident resulting in his death and that presentation of this mitigation would have resulted in a life sentence. Defense counsel considered this strategy and investigated citizen complaints against Officer Parrish. Counsel testified that after considering several factors — including the refusal of some witnesses to testify, the lack of substance of some testimony, and determinations by the Fort Pierce police that formal complaints against the officer were unfounded — he ultimately decided not to use this strategy. In addition, he considered the potential that the strategy would backfire, especially in light of the facts, such as Kearse's firing thirteen bullets into the officer as the officer pled for his life and Kearse's passenger's testimony that at all times Officer Parrish was friendly and polite. Defense counsel admitted that he did not request the officer's personnel file. However, the evidence at the postconviction hearing showed that any evidence in the file supporting the vilification mitigation could have been countered at trial by other evidence in it of Officer Parrish's good reports and commendations. We find that counsel's decision not to present this mitigation strategy was reasonable. Further, Kearse has not demonstrated prejudice from counsel's failure to obtain the personnel record. Accordingly, *Page 987 
we affirm denial of relief on this claim.
 5. Failing to Prepare Lay Witnesses
Kearse alleges that defense counsel failed to prepare him, Pamela Baker, and his aunt and uncle to testify. Kearse's claim that counsel failed to prepare him is based on an exchange at resentencing in which defense counsel asked Kearse where he had been incarcerated before his arrest for the murder. Kearse answered that he had been on death row at Raiford, which is where he was incarcerated after the trial. This answer was unresponsive to the question. Accordingly, Kearse fails to demonstrate that counsel was deficient. Kearse's claim regarding his relatives was not raised in his postconviction motion and thus it is unpreserved for appeal. Further, in his brief the claim is conclusory, meeting neither prong ofStrickland. Kearse's claim that counsel was ineffective for allowing Ms. Baker to testify regarding his juvenile record is also conclusory and meritless. He claims without explanation that the evidence was not admissible. As the testimony at the postconviction hearing made clear, the evidence was admissible and defense counsel chose to admit it through Ms. Baker who could present it in context with Kearse's mental health and social services history. Accordingly, the trial court was correct to deny relief on all of these claims.[5]
 B. Newly Discovered Evidence
Kearse argues that the circuit court erred in concluding that information he alleges could have been used at resentencing to impeach the state's mental health expert does not constitute newly discovered evidence. We disagree.
Kearse claims that evidence about Dr. Martell's conduct as an expert witness for the federal government in a criminal case in New Mexico demonstrates that he gave biased testimony in favor of the State at resentencing. In Jones v. State,709 So.2d 512 (Fla. 1998), this Court articulated a two-part test for establishing newly discovered evidence: (1) The evidence must have existed but have been unknown by the trial court, the party, or counsel at the time of trial, and must not have been discoverable through the use of due diligence, and (2) the newly discovered evidence must be of such a nature that it would probably produce an acquittal on retrial. Jones,709 So.2d at 521. The evidence shows that Kearse's penalty phase commenced on December 9, 1996, and sentence was imposed on March 25, 1997. Both Dr. Martell's actions in the federal criminal case and allegations regarding his conduct postdated Kearse's sentencing. Thus, the evidence did not exist at the time of the resentencing, and Kearse fails to meet the first prong of the test. The evidence also fails to meet the second prong.
 C. The Public Record Requests
Kearse next argues that he was denied due process because certain public records pertaining to his case were not provided to *Page 988 
him, in violation of Chapter 119, Florida Statutes (2005), and Florida Rule of Criminal Procedure 3.852. Each of his claims is addressed below.
Kearse requested production of pictures and videotape that Fort Pierce police took from the perspective of the apartments of two witnesses on the crime scene. The police produced more than two hundred pictures. At a hearing on Kearse's public records request, however, the police explained they did not have the videotape and that no records showed a videotape ever was placed in the evidence locker. The police suggested the possibility it did not exist due to malfunction. On appeal, Kearse argues that the postconviction court erred in denying an evidentiary hearing on his claim regarding the failure to produce the videotape. We conclude that the trial court did not abuse its discretion. The undisputed evidence demonstrates that the police did not have a videotape and at the hearing on the request, postconviction counsel apparently accepted the explanation given by the police and never again requested the tape or listed it as an outstanding request.
Kearse next contends the circuit court abused its discretion by denying his request for the personnel files of a state investigator and two assistant state attorneys. He claims that under Florida Rule of Criminal Procedure 3.852, he must be given the records because the circuit court did not timely deny the request. Rule 3.852(g)(3) provides that the trial court "shall hold a hearing and issue a ruling within 30 days" ordering production if the "additional public records sought are relevant to the subject matter . . . or appear reasonably calculated to lead to the discovery of admissible evidence." The rule also provides the trial court with discretion to conduct in-camera inspections and extend the time specifications in the rule. See Fla.R.Crim.P. 3.852(k). The record shows that after an in-camera inspection, the court denied the request for the personnel files, finding they were not relevant and could not reasonably be calculated to lead to evidence helpful to Kearse's postconviction motions. Accordingly, the court issued a ruling making the requisite finding and had discretion with regard to the date of issuing its order. Kearse has not demonstrated an abuse of that discretion.
Finally, Kearse argues that a letter the assistant state attorney sent to Kearse's trial counsel regarding the ineffective assistance claims against him in the postconviction proceedings is not privileged work product. The State responds that under section 119.071, Florida Statutes (2005), the letter is exempt from disclosure as work product prepared in anticipation of litigation. We review the claim under the abuse of discretion standard. See State v. Coney,845 So.2d 120, 137 (Fla. 2003) ("A circuit court's ruling on a public records request filed pursuant to a rule 3.850 motion will be sustained on review absent an abuse of discretion.").
At the evidentiary hearing, Kearse's trial counsel stated that the assistant state attorney sent him a letter regarding the issues at the hearing. Kearse's postconviction counsel asked to see the letter. Upon the State's objection, the circuit court sealed the letter and examined it in camera. After hearing argument, the trial court ruled that given the nature of the witness — Kearse's trial counsel — in a post-conviction proceeding and that trial counsel was listed as a witness for the State as well as the defense, the letter was work product not subject to disclosure.
Section 119.071(1)(d), Florida Statutes (2005), provides as follows in pertinent part: *Page 989 
 (d)1. A public record that was prepared by an agency attorney (including an attorney employed or retained by the agency or employed or retained by another public officer or agency to protect or represent the interests of the agency having custody of the record) or prepared at the attorney's express direction, that reflects a mental impression, conclusion, litigation strategy, or legal theory of the attorney or the agency, and that was prepared exclusively for civil or criminal litigation or for adversarial administrative proceedings, or that was prepared in anticipation of imminent civil or criminal litigation or imminent adversarial administrative proceedings, is exempt from s. 119.071(1) and s. 24(a), Art. I of the State Constitution until the conclusion of the litigation or adversarial administrative proceedings. For purposes of capital collateral litigation as set forth in s. 27.7001, the Attorney General's office is entitled to claim this exemption for those public records prepared for direct appeal as well as for all capital collateral litigation after direct appeal until execution of sentence or imposition of a life sentence.
The assistant state attorney's letter containing his mental impressions about the case clearly fits within the exemption of attorney work product prepared with regard to the ongoing postconviction proceedings. See § 119.071(1)(d), Fla. Stat. (2005); see also Fla.R.Crim.P. 3.220(g)(1) ("Disclosure shall not be required of legal research or of records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of the prosecuting or defense attorney or members of their legal staffs."); State v. Kokal,562 So.2d 324, 327 (Fla. 1990) ("Of course, the state attorney was not required to disclose his current file relating to the motion for postconviction relief because there is ongoing litigation with respect to those documents."). Accordingly, we hold that the circuit court did not abuse its discretion by denying Kearse's request for the letter.
 D. Miscellaneous Claims
Kearse argues that the circuit court erred in summarily denying a number of his claims. We disagree, and affirm the trial court's order.
During the 1996 resentencing proceeding, Kearse's defense counsel told the court that at the 1991 trial the courtroom was full of uniformed law enforcement officers. Based solely on this statement, Kearse argued in his postconviction motion that he was deprived of a fair trial in 1991. The circuit court summarily denied relief, finding the claim legally insufficient because the mere presence of the officers was insufficient to demonstrate a hostile courtroom and Kearse failed to demonstrate prejudice. We agree. Kearse does not allege any other facts that in the "totality of the circumstances" would entitle him to relief. See Woods v. Bugger,923 F.2d 1454, 1455 (11th Cir.1991) (applying a totality of the circumstances test to a similar claim).
Finally, in conclusory fashion and without any argument, Kearse alleges the following: (1) that counsel was ineffective for failing to cross-examine or impeach witnesses, failing to consult crime scene and firearms experts, failing to prepare defense witnesses, failing to argue age as a statutory mitigator, and for conceding aggravating factors without Kearse's consent; (2) that the trial court erred in denying cause challenges and rejecting mental health mitigation; (3) that Brady[6] violations *Page 990 
occurred; (4) that nonstatutory aggravators were presented; and (5) that pretrial publicity, the venue, and events in the courtroom denied him a fair trial. We hold these claims are waived and affirm the denial of relief. See Cooper v.State, 856 So.2d 969, 977 n. 7 (Fla. 2003) ("Cooper has chosen to contest the trial court's summary denial of various claims, by contending, without specific reference or supportive argument, that the `lower court erred in its summary denial of these claims.' We find speculative, unsupported argument of this type to be improper, and deny relief based thereon.");see also Duest v. Dugger, 555 So.2d 849, 852
(Fla. 1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived.").
 III. THE HABEAS PETITION
In his petition for a writ of habeas corpus, Kearse contends (A) that appellate counsel was ineffective for failing to raise two meritorious claims, and (B) that both his death sentence and lethal injection are unconstitutional. We address these claims below and deny the petition.
 A. Ineffective Assistance of Appellate Counsel
The requirements for establishing a claim based on ineffective assistance of appellate counsel parallel the standards announced in Strickland. "[The][p]etitioner must show 1) specific errors or omissions which show that appellate counsel's performance deviated from the norm or fell outside the range of professionally acceptable performance, and 2) the deficiency of that performance compromised the appellate process to such a degree as to undermine confidence in the fairness and correctness of the appellate result." Wilsonv. Wainwright, 474 So.2d 1162, 1163 (Fla. 1985). Counsel ordinarily is not deemed ineffective under this standard for failing to raise issues that are procedurally barred because they were not properly raised during the trial court proceedings. See Rutherford v. Moore, 774 So.2d 637,643 (Fla. 2000). Moreover, appellate counsel cannot be deemed ineffective for failing to raise nonmeritorious claims on appeal. See id.
 1. Denial of a Cause Challenge
Kearse alleges first that appellate counsel was ineffective for failing to raise the trial court's denial of Kearse's cause challenge to juror Matthews. Kearse's resentencing, like the 1991 trial, was held in Indian River County instead of St. Lucie County. During jury selection, defense counsel moved to strike Matthews for cause based on her knowledge of facts of the case and her relationship to a testifying detective.[7]
After the court denied the strike, defense counsel took the necessary steps to preserve the issue by requesting additional peremptories and renewing the motion before the jury was sworn.See Trotter v. State, 576 So.2d 691 (Fla. 1990) (explaining the requirements for preserving a cause challenge). On direct appeal, appellate counsel raised the denials of other cause challenges, but did not raise the preserved claim regarding Matthews, who actually served on the jury. SeeKearse II, 770 So.2d at 1128-29. Accordingly, contrary to the State's argument, this *Page 991 
claim of ineffective assistance of appellate counsel is properly raised by habeas petition in this Court. Nevertheless, we deny the claim.
During individual questioning by the attorneys, Matthews indicated that she remembered a media report from several years before in which a Fort Pierce officer was "shot about 14 times" and "[t]here was like a trail where he tried to get away." She repeated that she was uncertain these facts concerned this case and had made the tentative connection based on the questioning during jury selection. Matthews also volunteered that, the night before, she learned from her husband's parents that her father-in-law's half brother, a retired Fort Pierce police officer, was coming to Florida for Christmas and to testify at a trial involving the murder of an officer. Matthews stated that she had not seen Detective Raulerson in three years and did not know him well. She assured the court that this would have no effect on her impartiality in the resentencing proceeding. At the resentencing, Raulerson, who was lead crime scene detective in the investigation of Officer Parrish's murder, testified regarding the gathering of physical evidence in the case.
We find that neither Matthews's vague memories about the crime, nor her attenuated relationship to a testifying detective, either separately or cumulatively, raises a reasonable doubt about her ability to be fair and impartial in light of her unwavering statements during voir dire of the need for a fair sentencing proceeding and her ability to be impartial. SeeLusk v. State, 446 So.2d 1038, 1041 (Fla. 1984) ("The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court."); Singer v. State, 109 So.2d 7, 24
(Fla. 1959) (announcing test for juror competency). Accordingly, the trial court did not err in denying the cause challenge, and appellate counsel was not ineffective for failing to raise the preserved claim.
 2. The Motion for Appointment of Co-Counsel
Kearse next argues that appellate counsel was ineffective for failing to raise on appeal the trial court's denial of defense counsel's motion for appointment of co-counsel at the 1991 trial. Shortly after his appointment, defense counsel moved for appointment of co-counsel on numerous grounds. After a hearing, the trial court denied the motion and denied the renewed motion before the first penalty phase.
In Armstrong v. State, 642 So.2d 730, 737 (Fla. 1994), we stated that the question of appointment of additional counsel rests within the discretion of the trial court "and is based on a determination of the complexity of a given case and the attorney's effectiveness therein." The record shows that trial counsel agreed with the trial court that the case was not complex, and Kearse does not claim here that it was. Accordingly, Kearse has not established that the motion for co-counsel would have been found meritorious on direct appeal and thus has failed to establish ineffective assistance of appellate counsel.
 B. Constitutional Claims
Kearse claims that his death sentence is unconstitutional on various grounds. First, he argues that because of his age, low level of intellectual functioning, and mental and emotional impairments he cannot be executed under Atkins v.Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335
(2002), which prohibited execution of people with mental retardation. However, Kearse's own expert at the resentencing testified that he was not mentally retarded, and he presented no evidence at his postconviction hearing that *Page 992 
he was. Thus, his sentence is not unconstitutional underAtkins. See Hill v. State, 921 So.2d 579, 584 (Fla.),cert. denied, 546 U.S. 1219, 126 S.Ct. 1441,164 L.Ed.2d 141 (2006).
Next, he argues that because he was only eighteen years and three months old at the time of the crime and had low level intellectual functioning and mental and emotional impairments, he cannot be executed under Roper v. Simmons,543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). Roper
prohibited execution of any defendant who was under age eighteen at the time of the crime. Accordingly, Kearse does not qualify for exemption from execution under Roper. SeeHill, 921 So.2d at 584.
Kearse also argues that Florida's capital sentencing scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584,122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), because instructions diminish the role of the jury, all elements are not charged in the indictment, a unanimous jury is not required, and the jury does not decide all the elements. First, Ring is not retroactive to Kearse's case. See Johnson v. State,904 So.2d 400, 402 (Fla. 2005) ("We hold that . . . the United States Supreme Court's decision in Ring v. Arizona . . .
does not apply retroactively in Florida."). We also note that Kearse's resentencing jury returned a unanimous recommendation of death. Further, this Court has rejected all of these claims previously. See Parker v. State,904 So.2d 370, 383 (Fla. 2005) (listing claims and citing cases in which the Court denied these and other claims).
Finally, Kearse argues that Florida's lethal injection statute and procedure are unconstitutional. This Court has previously upheld the statute against this challenge in other cases.See Sims v. State, 754 So.2d 657 (Fla. 2000);accord Thompson v. State, 796 So.2d 511, 515
(Fla. 2001); Bryan v. State, 753 So.2d 1244, 1254 (Fla. 2000). We have also previously rejected the claims Kearse raises here regarding the lethal injection procedure. SeeDiaz v. State, 945 So.2d 1136, 1144 (Fla.) (citing cases),cert. denied, ___ U.S. ___, 127 S.Ct. 850,166 L.Ed.2d 679 (2006). Accordingly, we deny relief on these claims.[8]
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
[1] Most of the twenty-five issues Kearse raised on appeal concerned the penalty phase. Kearse I,662 So.2d at 680-81. The guilt phase issues alleged error as follows: (1) the giving of the State's special instruction on premeditated murder over objection; (2) the instruction to the jury on escape as the underlying felony of felony murder; (3) the denial of Kearse's cause challenges to prospective jurors; (4) the admission of testimony regarding the purpose of a two-handed gun grip; (5) the denial of motions to suppress; (6) the instruction on reasonable doubt denied Kearse due process and a fair trial; and (7) the admission of hearsay evidence during the guilt phase.
[2] Kearse raised the following claims: (1) the trial court's refusal to return venue to the county where the offense occurred; (2) the denial of Kearse's objection to a motion to compel a mental health examination; (3) the denial of Kearse's motion for a continuance; (4) the proportionality of the death penalty; (5) the trial court's evaluation of the mitigating circumstances; (6) the trial court's failure to find the statutory mitigating circumstance of emotional or mental disturbance; (7) the denial of Kearse's motion to disqualify the prosecutor; (8) the denial of Kearse's motion for mistrial based on the prosecutor's comments; (9) the trial court informed the jury that Kearse had been found guilty in a previous proceeding, but that the case was remanded for resentencing; (10) the denial of Kearse's motion to interview jurors to determine juror misconduct; (11) pretrial conferences were conducted during Kearse's involuntary absence; (12) the granting of the State's cause challenge to a juror; (13) the denial of Kearse's cause challenges to two jurors; Kearse's compelled mental health examination (14) constituted an unconstitutional rule of discovery, (15) violated the ex post facto clauses of the United States and Florida Constitutions, and (16) Kearse's Fifth, Sixth, Eighth, and Fourteenth Amendment rights; (17) the victim impact jury instruction was vague and gave evidence undue importance; (18) the trial court gave little weight to age as a mitigating circumstance; the "committed during a robbery" aggravating circumstance (19) should have been merged with the other aggravators or (20) should not have been considered; (21) the admission of photographs of the victim; and (22) electrocution is cruel and unusual punishment. Kearse II, 770 So.2d at 1123.
[3] Kearse claimed the following: (1) that public records were withheld; (2) that defense counsel failed vigorously to advance Kearse's position, to cross-examine witnesses at trial and at the motion to suppress hearing, to consult with crime scene, firearm, and medical experts, to request co-counsel at the second penalty phase, to prepare witnesses to testify at the resentencing, to object to the admission of evidence, to argue the age mitigating factor, to present evidence regarding the victim's prior misconduct, to obtain Kearse's consent to concede aggravating factors, and cumulative error; (3) that the trial court erred in denying a cause challenge, in denying trial counsel's motion for co-counsel, and in rejecting two statutory mental health mitigating factors; (4) that the State knowingly withheld evidence in violation of Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963); (5) that newly discovered evidence demonstrates the State's expert was biased for the prosecution; (6) that Kearse's rights under Ake v. Oklahoma, 470 U.S. 68,105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), were denied through the ineffective assistance of counsel and inadequate assistance of mental health experts; (7) that Kearse's death sentence is fundamentally unfair; (8) that Kearse was denied the right to a fair trial because of pretrial publicity, the lack of adequate venue, and events in the courtroom at trial; (9) that Florida's death penalty scheme violates Ring v. Arizona,536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (10) that his death sentence is unconstitutionally based on an automatic aggravator; and (11) that Kearse is insane to be executed.
[4] In fact, when we affirmed the death sentence in this case, three members of this Court found the mitigation so compelling that they dissented, opining that "[t]he bottom line is that this is clearly not a death case. It is not one of the most aggravated and least mitigated or among the worst of the worst for which we have reserved death as the only appropriate response." Kearse II, 770 So.2d at 1138 (Anstead, J., dissenting).
[5] Kearse also argues that defense counsel was ineffective for failing to cross-examine two witnesses at the motion to suppress hearing. He claims that on the day of the murder the eyewitness passenger (Rhonda Pendleton) was his girlfriend who was staying at her brother's home. Kearse argues that the police search of that house was invalid because he was an overnight guest there. This is not the argument Kearse made in his postconviction motion, and it is thus not preserved. Second, we held in Kearse I that exigent circumstances provided probable cause for the warrantless arrest and that physical evidence seized at the scene was not subject to suppression. Kearse I, 662 So.2d at 684.
[6] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963) (requiring State disclosure of material information favorable to the defense).
[7] Kearse's contention on appeal that the juror was not qualified because she was the prosecutor's insurance agent was not preserved for review.
[8] As a result of the execution of Angel Diaz, litigation concerning the constitutionality of Florida's lethal injection procedures is ongoing in Lightbourne v. McCollum, No. SC06-2391 (Fla. petition filed Dec. 14, 2006). We do not consider those issues here and express no opinion regarding the merits of any subsequent challenge Kearse may bring related to lethal injection.