PER CURIAM.
Leo Schofield appeals the denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850, in which he argued that he was entitled to a new trial based on newly discovered evidence.[1] We write to address why we must affirm.
In 1989, Schofield was convicted of first-degree murder for the death of his wife, Michelle, in February 1987. At the time of Schofield’s trial, he was aware that there were several unidentified fingerprints found in Michelle’s abandoned car, and he used those unidentified fingerprints to support his defense that someone else, namely the person who left those fingerprints, was the perpetrator of the crime.
In 2004, through an unusual series of events,[2] the previously unidentified fingerprints were identified as belonging to one Jeremy Scott. Based on that identification, Schofield filed a motion for postcon-viction relief seeking a new trial based on the “newly discovered evidence” of the identity of the individual who left the fingerprints. The postconviction court initially summarily denied relief on the ground that this evidence was not “newly discovered.” This court, however, found that the identity of the individual who left the fingerprints was properly characterized as “newly discovered evidence,” and we therefore remanded for the postconviction court to hold an evidentiary hearing on Schofield’s claim. See Schofield v. State, 32 So.3d 90, 93-94 (Fla. 2d DCA 2009).
On remand, the postconviction court held an extensive evidentiary hearing. During this hearing, Schofield offered copious evidence concerning Jeremy Scott’s prior criminal offenses, the factual details of those offenses, Scott’s prior violent interactions with his girlfriends and others, and evidence concerning Scott’s alleged reputation for violence. The State objected to the postconviction court’s consideration of this evidence, noting that it was inadmissible as improper character evidence. In response, Schofield made a number of arguments as to why he believed such evidence should be admissible despite the clear provisions of the evidence code to the contrary.
In a lengthy written order denying Schofield’s motion, the postconviction court stated that “for purposes of the court’s analysis,” it would consider Schofield’s *1069 proffered evidence concerning Scott’s criminal history, reputation, and prior bad acts as if it was admissible. The court then found that, even if it considered that evidence, it could not say that the evidence weakened the case against Schofield to the point that it would probably produce an acquittal on retrial. Schofield then appealed that ruling to this court.
In reviewing a postconvietion court’s order on a newly discovered evidence claim after an evidentiary hearing, this court must accept the postconviction court’s findings of fact if they are based upon competent, substantial evidence. Hitchcock v. State, 991 So.2d 337, 349 (Fla.2008); Green v. State, 975 So.2d 1090, 1100 (Fla.2008); Blanco v. State, 702 So.2d 1250, 1252 (Fla.1997). This court must also defer to the postconviction court’s determinations concerning the credibility of witnesses and the weight to be given to particular evidence. Hitchcock, 991 So.2d at 349; McLin v. State, 827 So.2d 948, 954 n. 4 (Fla.2002); Blanco, 702 So.2d at 1252. However, as with rulings on other postcon-viction claims, this court conducts a de novo review of the postconviction court’s application of the facts to the law. Hitchcock, 991 So.2d at 349; Green, 975 So.2d at 1100.
As to claims concerning newly discovered evidence, the supreme court has set forth two requirements that a defendant must satisfy to be entitled to a new trial.
To obtain a new trial based on newly discovered evidence, a defendant must demonstrate that: (1) the evidence was not known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence; and (2) the newly discovered evidence is of such nature that it would probably produce an acquittal on retrial. See Jones v. State, 709 So.2d 512, 521 (Fla.1998) (Jones II).
Hitchcock, 991 So.2d at 349. In this case, this court determined in Schofield’s earlier appeal that the identification of the previously unidentified fingerprints as those of Jeremy Scott constituted newly discovered evidence. See Schofield, 32 So.3d at 93. Thus, the evidentiary hearing on remand addressed solely the second prong of the Jones II test, i.e., whether the admissible newly discovered evidence was of such nature that it would probably produce an acquittal on retrial.
Newly discovered evidence satisfies the second prong of the Jones II test if it “ ‘weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability.’” Jones v. State, 709 So.2d 512, 526 (Fla.1998) (Jones II) (quoting Jones v. State, 678 So.2d 309, 315 (Fla.1996)). In determining whether the evidence compels a new trial, the trial court must “consider all newly discovered evidence which would he admissible ” and must “evaluate the weight of both the newly discovered evidence and the evidence which was introduced at the trial.” Jones v. State, 591 So.2d 911, 916 (Fla.1991) (emphasis added). Thus, even assuming that evidence is newly discovered, a new trial is not warranted if the newly discovered evidence would not be admissible on retrial. Sims v. State, 754 So.2d 657, 660 (Fla.2000); Robinson v. State, 707 So.2d 688, 691-92 (Fla.1998).
At Schofield’s evidentiary hearing, the only admissible newly discovered evidence offered was the evidence of the fingerprint identification itself and Jeremy Scott’s testimony explaining how his fingerprints could have been found in Michelle’s car. To that end, Scott testified that he used to drive up and down the stretch of 1-4 through Lakeland looking *1070 for abandoned cars. When he found one, he would break into it and steal stereo equipment. Scott offered this explanation to detectives before he was told that speakers and a power amp were missing from Michelle’s car when it was found abandoned on 1-4. He also offered this explanation before he knew that his fingerprints were found on the inside of the windshield of Michelle’s car. The postconviction court accepted Scott’s explanation as credible, and it based its denial of Schofield’s motion in part on that credibility assessment.
In this appeal Schofield invites this court to reassess the credibility of the witnesses presented at both the original trial and the evidentiary hearing, and he specifically argues that this court should find Scott’s explanation for his fingerprints in Michelle’s car not to be credible. He points to other evidence offered at the hearing that tends to discredit Scott’s explanation, including Scott’s fingerprint on a piece of paper in the hatchback area of Michelle’s car. However, the postconviction court was present at the hearing to observe Scott’s demeanor. In addition, the postconviction court had the benefit of hearing the taped phone calls between Scott and his grandmother while the record in this appeal includes only a transcript of these tapes — not the recordings themselves. Therefore, while there is no question that Scott’s testimony was impeached to some extent, we must defer to the credibility determination made by the postconviction court, which heard and saw the testimony at issue. See Blanco, 702 So.2d at 1252; see also Rodriguez v. State, 919 So.2d 1252, 1268-69 (Fla.2005); McLin, 827 So.2d at 954 n. 4. Regardless of our thoughts on the matter, as an appellate court, we may not substitute our view of the facts or their credibility for that of the postconviction court, which was sitting as the trier of fact.
At the evidentiary hearing, Scho-field also relied heavily on extensive evidence of Scott’s prior criminal activities, including the facts underlying his prior convictions and the testimony of his former girlfriend about prior bad acts, to support Schofield’s position that the newly discovered evidence “is of such nature that it would probably produce an acquittal on retrial.” However, none of that evidence would be admissible on retrial.
The supreme court addressed a similar issue in Hitchcock v. State, 418 So.2d 741 (Fla.1982). There, James Hitchcock was accused of the first-degree murder of his brother Richard’s stepdaughter. Id. at 743. James sought to call numerous witnesses to testify that Richard had exhibited violent tendencies and that he had a reputation for violence. Id. at 744. James asserted that such evidence was relevant to impeach Richard’s testimony and to prove James’s defense that Richard, rather than James, committed the murder. Id. In affirming the trial court’s decision to exclude this evidence, the court explained:
A defendant has the right to present witnesses in his own defense but must comply with established rules of procedure and evidence designed to assure both fairness and reliability. See Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Evidence of particular acts of misconduct cannot be introduced to impeach the credibility of a witness. Fulton v. State, 335 So.2d 280 (Fla.1976). For impeachment purposes the only proper inquiry into a witness’ character goes to reputation for truth and veracity. Pandula v. Fonseca, 145 Fla. 395, 199 So. 358 (1940). The excluded testimony could have been relevant only to show Richard Hitchcock’s alleged bad acts and violent propensities and, thus, was properly excluded for impeachment purposes. Nor *1071 is there merit to [James]’s claim that the testimony concerning Richard’s character would tend to prove that Richard committed the murder.
Id. at 744.
In this case, as in Hitchcock, Schofield sought to introduce evidence of Scott’s prior physical fights with his former girlfriend and others and his reputation for violence, purportedly to show that Scott could have murdered Michelle. However, this evidence was relevant only to show Scott’s alleged bad acts and violent propensities, neither of which are admissible for impeachment purposes. See § 90.404(2)(a), Fla. Stat. (2010) (prohibiting the admission of evidence of prior bad acts when the only relevance is to prove propensity to commit crimes). Further, none of the evidence of Scott’s past violence against his former girlfriend is relevant to prove that Scott murdered Michelle. Therefore, this evidence would not be admissible and thus could not, as a matter of law, have been of such a nature that it would probably produce an acquittal on retrial.
Similarly, Schofield’s “newly discovered evidence” concerning the facts underlying Scott’s prior convictions, as well as the facts underlying a crime for which Scott was tried and acquitted, is not admissible. Under section 90.610, Florida Statutes (2010), the fact of Scott’s prior convictions for felonies and crimes of dishonesty and the number of his convictions for those offenses would have been admissible to impeach his credibility. However, the descriptions of the prior crimes and the details of the facts underlying them are not generally admissible. See Howard v. Risch, 959 So.2d 308, 313 (Fla. 2d DCA 2007) (“Although the fact a witness or party was convicted of a crime may be relevant and admissible for impeachment purposes, the nature of the crime or any details about the crime are generally inadmissible.”); Livingston v. State, 682 So.2d 591, 592 (Fla. 2d DCA 1996); Parks v. Zitnik, 453 So.2d 434, 437 (Fla. 2d DCA 1984). And as to the limited exception to the general rule for reverse Williams[3] rule evidence, none of the facts proffered concerning Scott’s prior crimes are sufficiently similar to Michelle’s murder to be admissible under that theory. See Drake v. State, 400 So.2d 1217, 1219 (Fla.1981) (noting that Williams rule evidence is admissible only when there are “identifiable points of similarity which pervade the compared factual situations” and that the “points of similarity must have some special character or be so unusual as to point to the defendant”); Rivera v. State, 561 So.2d 536, 540 (Fla.1990) (excluding reverse Williams rule evidence when the only similarities were not so unusual as to point solely to another offender). Moreover, evidence of an arrest that did not result in a conviction is not admissible under any circumstances. Fulton v. State, 335 So.2d 280, 282-83 (Fla.1976); Jordan v. State, 107 Fla. 333, 144 So. 669, 670 (1932) (“It is only permitted to interrogate witnesses as to previous convictions, not mere former arrests or accusations, for crime.”). Therefore, all of the evidence offered by Schofield concerning Scott’s alleged violent acts toward his former girlfriend and others, his alleged reputation for violence, and the details of the crimes underlying his prior felony convictions is simply inadmissible and cannot weaken the case against Schofield so as to give rise to a reasonable doubt as to his guilt.[4]
*1072 In this appeal, Schofield contends that the postconviction court definitively ruled that all of his proffered evidence was admissible and that this court must defer to that ruling. Initially, we disagree with Schofield’s assertion that the postconviction court made any such definitive ruling. However, even if it did, we are not bound by that ruling. While a postconviction court’s rulings on the admissibility of evidence will not generally be disturbed absent an abuse of discretion, see, e.g., Fitzpatrick v. State, 900 So.2d 495, 514-15 (Fla.2005), its discretion on evidentiary matters is limited by case law and the rules of evidence. McDuffie v. State, 970 So.2d 312, 326 (Fla.2007); Masaka v. State, 4 So.3d 1274, 1279 (Fla. 2d DCA 2009); McCray v. State, 919 So.2d 647, 649 (Fla. 1st DCA 2006). A postconviction court’s erroneous decision to admit clearly inadmissible evidence is not entitled to deference. McCray, 919 So.2d at 649 (noting that a trial court’s erroneous interpretation of the evidence code and case law applying it “is subject to de novo review”). Further, as noted above, this court reviews the postconviction court’s application of the facts to the law de novo. See, e.g., Hitchcock, 991 So.2d at 349. There is simply no authority for the topsy-turvy notion that a postconviction court can bind an appellate court on issues of law.
Finally, Schofield asserts that any errors in the postconviction court’s eviden-tiary rulings have been waived because the State failed to file a cross-appeal. However, the State, as the beneficiary of a favorable ruling, need not file a cross-appeal. Moreover, no statute or rule permits the State to appeal a postconviction court’s general evidentiary rulings, whether conditional or not. See Fla. R. App. P. 9.140(c)(1) (listing the grounds upon which the State may appeal in a criminal case). Thus, the lack of a cross-appeal by the State does not prevent this court from considering whether Schofield’s proffered evidence would be admissible on retrial.
In sum, after a thorough review of the record, the transcript of the evidentiary hearing, and the transcript of the original trial, we find that the postconviction court’s factual findings and credibility determinations are supported by competent, substantial evidence and that the postcon-viction court properly applied the law to the facts. Accordingly, we have no legal basis upon which to reverse the postcon-viction court’s ruling.
Affirmed.
CASANUEVA and VILLANTI, JJ„ and CASE, JAMES R., Associate Senior Judge, Concur.

. Schofield also raised a claim asserting that he was entitled to a new trial based on the State’s allegedly bad faith destruction of certain evidence nine years after the crime and seven years after Schofield’s trial. Having thoroughly reviewed the arguments raised in Schofield's brief and the law on this subject, we find the issue to be without merit, and we affirm on that claim without further comment.

. The record shows that Schofield’s girlfriend obtained copies of the fingerprints through a public records request. She then provided them to a friend of hers, who was a captain with the Hendry County Sheriff’s Office. Despite this case having absolutely no connection to Hendry County, this captain submitted the fingerprints to her latent prints section, falsely asserting that they were needed as part of an investigation into a pending Hendry County case. After the fingerprints were identified, the Hendry County sheriff’s captain contacted the Polk County Sheriff’s Office and provided the identification information, and the Polk County Sheriff reopened his investigation.

. Williams v. State, 110 So.2d 654 (Fla.1959).

. While we recognize that this evidence is intriguingly serendipitous to Schofield, its favorability does not make it admissible outside the rules of evidence any more than if its *1072 import made his conviction even more compelling.