WARNER, J.
In denying appellant’s motion for postconviction relief, the trial court found, inter alia, that his counsel was not ineffective for advising appellant not to testify, as the revelation of his prior convictions *742 would outweigh the necessity for his testimony. Because appellant’s testimony was the only evidence supporting his defense to the burglary that he was invited into the home, counsel’s admitted theory of defense, we conclude that counsel’s advice was deficient under the particular facts of this case. We therefore reverse.
According to the state’s witnesses, Matthew Farmer was on the porch at the residence of his girlfriend, Michelle Engle-hartt, and her roommate, Jackie Heyer. The women were sleeping in the house, as was a friend, John Goodwin. Matthew had his girlfriend’s gun because of trouble earlier in the day when an ex-boyfriend attacked Jackie and threatened Michelle. Around 3:30 a.m., appellant, whom Matthew did not know, appeared asking for the ex-boyfriend and for some cocaine. When appellant saw Matthew had a gun, he tried to take it away by fighting with Matthew. Without appellant noticing, Matthew was able to unload the gun as appellant was choking him. Appellant then obtained control over the gun.
Appellant dragged Matthew inside the house and pistol-whipped Michelle and John, who were dozing on the couch, to wake them and ask them for cocaine. Michelle asked for her gun back, and appellant gave it to her. Matthew, who was sitting between Michelle and John, gave Michelle the bullet or clip he had removed from the gun, telling her he thought she would need it. Matthew and John then wrestled with appellant, trying to get him out of the house, but they were small and he was much larger. While appellant had both men in a headlock, Michelle threatened to shoot him if he did not leave. He lunged toward her and she shot him in the chest, seriously wounding him.
Michelle then ran to a local store to call the police, explaining that there was an intruder in her house whom she shot with her own gun. This call was not made until around 4:40 a.m. Michelle testified that she did not give appellant permission to enter her house. When police officers arrived at the scene, they found marijuana in the house.
Matthew also confirmed he never gave appellant permission to enter the house, or to hit him. After the shooting, Matthew climbed up on the roof, where he passed out. He said the police found him there around 8:30 or 9:00 in the morning. He understood Michelle and Jackie ran to a phone to call the police. Neither Jackie nor John testified at trial.
Appellant was appointed counsel and upon his first meeting, he explained his version of events to counsel. Appellant was walking home and saw a man — Matthew — shooting a gun and asked if he was trying to shoot him. They laughed and talked for a while, and then appellant asked Matthew if he knew where to get cocaine. Matthew said Michelle might know and invited him into the house. Matthew talked to Michelle about getting appellant some cocaine, and Matthew reloaded the gun. While they were talking, Matthew asked appellant his name. Appellant replied, “Tony Lee” — giving his first and middle names. Michelle’s ex-boyfriend was named David Lee, and Matthew thought appellant was one of David Lee’s cronies. According to appellant, Matthew — not Michelle — immediately shot him, point blank. That was all appellant remembered until being transported to the hospital. Appellant did not know David Lee at the time of the shooting but later met him while in jail and learned of his connection. At the evidentiary hearing on postconviction relief, counsel confirmed that appellant told him all of this, except for Matthew shooting him instead of Michelle. Nevertheless, counsel admitted knowing that, according to appellant, he *743 was invited into the house, and counsel also remembered appellant telling him about David Lee.
At trial, counsel put on no witnesses to support any defense. Instead he extensively cross-examined the state witnesses regarding conflicts in their testimony and prior inconsistent statements. He also attacked the state’s investigation of the case. In the end, appellant was convicted of burglary with a battery and simple battery.
In his motion for postconviction relief, appellant claimed counsel misadvised him that his testimony was not needed, and that if he did testify, the jury would learn of his prior conviction for aggravated battery. On the contrary, his testimony was needed because there was no way to put his version of events before the jury without it, particularly his invitation into the house, which would negate the burglary charge.
At the evidentiary hearing on the motion, counsel admitted that the theory of defense was that appellant was invited to enter Michelle’s home, in accordance with appellant’s version of the incident. He was under the impression at the hearing that neither Matthew nor Michelle testified at trial as to whether appellant was invited in, even though the trial transcript shows that each specifically stated appellant had no permission to enter the house. It was counsel’s belief that he could put the defense theory of consensual entry before the jury during closing argument, without any evidence to support it other than his argument that the state witnesses’ testimony was inconsistent and not credible. He also testified that he thought that the danger of placing appellant’s prior convictions before the jury far outweighed any necessity of the testimony to the defense. However, counsel did not know how many prior convictions appellant had. Counsel denied advising appellant that the jury would learn the nature of his prior convictions if he testified.
In its order denying the postconviction relief motion, among its factual findings the court noted that “[Counsel] testified that he advised Defendant not to testify because the jury may have found out about his prior convictions, which far outweighed the necessity of Defendant testifying.” The court found that trial counsel’s performance was not deficient in that his strategic decisions were reasonable, considering the totality of the circumstances. Moreover, the court found that even if counsel’s performance was deficient, appellant had not shown a reasonable probability that the outcome of the proceedings would be different. This appeal follows.
Most recently, our supreme court summarized the elements required to prove a claim of ineffective assistance of counsel in Morris v. State, 931 So.2d 821 (Fla.2006):
In order to establish a claim of ineffective assistance of counsel, a defendant must meet two requirements:
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d *744 674 (1984). To establish the first prong under Strickland, the defendant must demonstrate that “counsel’s representation fell below an objective standard of reasonableness” under “prevailing professional norms.” Id. at 688, 104 S.Ct. 2052. To establish the second prong under Strickland, the defendant must show that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 694, 104 S.Ct. 2052. When reviewing a trial court’s ruling after an evidentiary hearing on an ineffective assistance claim, this Court gives deference to the trial court’s factual findings to the extent they are supported by competent, substantial evidence, but reviews de novo the trial court’s determinations of deficiency and prejudice, which are mixed questions of fact and law. See Arbelaez v. State, 898 So.2d 25, 32 (Fla.2005).
Id. at 828.
It has been thoroughly established that “[c]ounsel cannot be deemed ineffective merely because current counsel disagrees with trial counsel’s strategic decisions. Moreover, strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.” Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000) (citations omitted). “A reasonable, strategic decision is based on informed judgment.” Henry v. State, 862 So.2d 679, 685 (Fla. 2003) (citation omitted).
In this case, counsel testified that he and appellant agreed that their theory of defense to the burglary charge was that appellant was invited into the residence. At trial, counsel apparently thought that he could rely solely on the inconsistencies in the state’s witnesses’ stories to somehow support this defense theory. However, both Matthew and Michelle testified that appellant was not invited inside the dwelling. Therefore, when counsel told appellant that his testimony was not needed to support the defense, the advice was deficient. Without appellant’s testimony, there was no evidence or inferences from the admitted evidence to support the theory of invitation.
Furthermore, it is apparent from counsel’s testimony that he was most interested in not losing the “sandwich” in closing argument. Yet he would not have lost this advantage if appellant was his sole witness.
Although counsel also testified that he did not want appellant to testify for fear of the jury learning that appellant had prior convictions, the jury had already learned that Matthew Farmer was a convicted felon and there were drugs around the house, thus reducing any effect of appellant’s convictions on his credibility, as compared to that of the state’s witnesses.
We deem counsel’s advice to appellant regarding his decision to testify as deficient. Counsel failed to appreciate the fact that there was no evidence to support the defense theory that appellant was invited in when he advised appellant not to testify. Strategic decisions must be informed decisions, where the alternatives have been considered and rejected. Oc-chicone. Where those decisions are uninformed, counsel’s judgment may be deficient. That is the case here.
At the evidentiary hearing on the postconvietion relief motion, counsel also testified that he thought that part of appellant’s version of events was “preposterous.” He found it unbelievable that *745 Matthew and Michelle thought appellant might be related to Michelle’s former boyfriend. Nevertheless, he admitted that he did not investigate this, even when appellant told him that he had met the former boyfriend in jail. Again, without investigating the defense, counsel cannot make an informed strategic decision. Occhicone.
As a part of the trial strategy, counsel also intended to attack the inconsistencies in the testimony of the witnesses and the lack of substantial investigation by the police. However, this strategy was not inconsistent with having appellant testify.
Furthermore, we find it unreasonable and deficient performance to believe that counsel could argue to the jury a theory that appellant was invited in -without any evidence whatsoever to support it and all the evidence clearly contrary to that theory. Such an argument amounts to sheer speculation. Closing argument is supposed to present the lawyer’s view of the evidence and all reasonable inferences which may be drawn from it. Unfortunately, the evidence in this case did not present any inference at all that appellant was invited into the premises. And when he mentioned his theory in rebuttal, it seemed pulled from thin air.
The question remains whether, but for the deficient performance by counsel, there is a reasonable probability that the results of the proceeding would be different. Strickland teaches us that:
The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel’s errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.
466 U.S. at 695,104 S.Ct. 2052. The Court thus expressly rejected a “more likely than not” standard for evaluating whether counsel’s deficient performance altered the outcome of the case. Instead, as noted by the Fourth Circuit:
With respect to the prejudice requirement, the petitioner “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” The level of certainty is something less than a preponderance; it need not be proved that counsel’s performance more likely than not affected the outcome. Instead, the petitioner need only demonstrate “a probability sufficient to undermine confidence in the outcome.”
Young v. Catoe, 205 F.3d 750, 759 (4th Cir.2000) (citations omitted).
Given the highly unusual circumstances involved in this case and the obvious inconsistencies with respect to the evidence actually presented, we think that appellant has demonstrated a reasonable probability sufficient to undermine confidence in the outcome. Both Matthew’s and Michelle’s testimony were filled with inconsistencies from their prior statements, including inconsistencies as to whether appellant actually hit Michelle at all. It also strains credulity to think that appellant would give back a gun he believed to be loaded to the people with whom he was just fighting, which is what Matthew and Michelle both testified to. Further, the fact that appellant arrived at the house at around 3:30, yet the 911 call to the police after the shooting came at 4:42, over an hour later, suggests that more occurred at the house than the events described by Matthew. A longer period of time would be consistent with appellant’s account that Matthew invited him into the house for the purpose of obtaining drugs, and Matthew’s testimony *746 is somewhat consistent with this, as Matthew testified that appellant kept asking for drugs. Finally, Matthew’s escape to the roof of the house after the shooting may appear more consistent with having been involved in an attack on the appellant rather than the other way around. All of this raises at least a reasonable probability that counsel’s deficient performance affected the outcome of the proceeding.
Based upon- our review of the trial testimony together with the testimony at the evidentiary hearing, and considering our de novo standard of review of the prejudice prong, we conclude that both prongs of the Strickland test have been met. We therefore reverse and remand for a new trial.
SHAHOOD and TAYLOR, JJ„ concur.