WARNER, J.
Appellant, Nelson, challenges the summary denial of his motion for postconviction relief. While the trial court found that his counsel’s performance may have been deficient, it concluded that appellant suffered no prejudice. We reverse, because the record before us does not conclusively refute the allegations of ineffectiveness or prejudice.
Nelson was convicted of home invasion robbery after a jury trial in which the victim and the co-defendant testified against him. From the testimony of the victim, the jury learned that Nelson went to the victim’s house to borrow a movie. Nelson took the movie and left the victim’s house, but returned forty-five minutes later to “hang out.” Shortly thereafter, Joshua Sorrell, the co-defendant, knocked on the door. When the victim opened the door, Sorrell entered and brandished a gun. Nelson ran into the victim’s bedroom screaming that Sorrell would kill him. In his trial testimony the victim noted that Nelson did not close the door all the way, which the victim thought was odd. Sorrell got Nelson to come back to the living room and then threatened him. Sorrell reached into Nelson’s pocket and took his money. After robbing Nelson, Sorrell followed the victim into the victim’s bedroom and forced him to give up all of his money. Sorrell then left the apartment, and Nelson departed a few minutes later. A police report of the incident states that Nelson told the victim to call 911 after Sorrell left, but the victim would not call, because he didn’t want to get in trouble with his mother. Defense counsel never asked the victim about whether Nelson encouraged him to call the police right after the incident. Defense counsel also failed to question the victim on his testimony that Nelson did not close the door when he ran into the bedroom. It was this action by Nelson that the victim found suspicious and made him think that Nelson might be involved in the entire incident. However, the victim had made a statement to the police that Nelson had closed the door to the room.
The police developed Sorrell as a suspect. When they picked him up, he claimed that Nelson planned the incident and was involved. At trial, Sorrell testified that Nelson was the mastermind of the entire incident. He admitted going into the victim’s house with a gun and robbing both Nelson and the victim. He also told the two that he would kill them if they called the police. In cross-examination, defense counsel attempted to question Sorrell regarding Nelson’s relationship with Sorrell’s sister. Sorrell denied any relationship. Defense counsel also brought out the plea agreement that Sor-rell made with the state in which he would cooperate with the prosecutor’s office in Nelson’s case, for which he received a sentence of three years in prison and three years of probation. The state played Sor-rell’s statement given three days after the incident. Although basically the same, his trial testimony was not entirely consistent with the facts he relayed in the statement. The defense rested without presenting any evidence. Nelson was convicted and sentenced to twenty years in prison. He appealed his conviction, but this court affirmed.
In his motion for postconviction relief, he raised several issues, only two of which we find merit discussion. First, he claimed that his counsel provided ineffective assistance by misadvising him regarding his right to testify. He claimed that his counsel informed him that the jury would be advised that his juvenile dispositions could be used against him if he were to testify. Based upon this misadvice, he decided not to testify. Had he testified, he would have told the jury that Sorrell had animosity against him because of his rela *1197 tionship with Sorrell’s sister, which would cast doubt on Sorrell’s testimony. Second, counsel also performed deficiently in failing to impeach the victim with prior inconsistent statements regarding whether Nelson closed the door when he ran into the bedroom and whether Nelson had told the victim to call the police. Nelson contended in his motion that, given the evidence in the case, had Nelson testified and had counsel impeached the victim, the result would have been different.
The trial court summarily denied the motion. As to each of the issues above, the trial court found that even if there were deficient performance, Nelson could not show prejudice pursuant to Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With this conclusion, we disagree that the record conclusively refutes Nelson’s assertions.
The test for relief for ineffective assistance of counsel enunciated in Strickland is well-established:
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687, 104 S.Ct. 2052. Explaining these two criteria, our supreme court has stated:
To establish the first prong under Strickland, the defendant must demonstrate that “counsel’s representation fell below an objective standard of reasonableness” under “prevailing professional norms.” Id. at 688, 104 S.Ct. 2052. To establish the second prong under Strickland, the defendant must show that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 694, 104 S.Ct. 2052. When reviewing a trial court’s ruling after an evidentiary hearing on an ineffective assistance claim, this Court gives deference to the trial court’s factual findings to the extent they are supported by competent, substantial evidence, but reviews de novo the trial court’s determinations of deficiency and prejudice, which are mixed questions of fact and law. See Arbelaez v. State, 898 So.2d 25, 32 (Fla.2005).
Morris v. State, 931 So.2d 821, 828 (Fla.2006).
As we noted in Visger v. State, 953 So.2d 741, 745 (Fla. 4th DCA 2007):
Strickland teaches us that:
The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel’s errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.
466 U.S. at 695, 104 S.Ct. 2052. The Court thus expressly rejected a “more likely than not” standard for evaluating whether counsel’s deficient performance altered the outcome of the case. Instead, as noted by the Fourth Circuit:
With respect to the prejudice requirement, the petitioner “must show that there is a reasonable probability that, *1198 but for counsel’s unprofessional errors, the result of the proceeding would have been different.” The level of certainty is something less than a preponderance; it need not be proved that counsel’s performance more likely than not affected the outcome. Instead, the petitioner need only demonstrate “a probability sufficient to undermine confidence in the outcome.”
Young v. Catoe, 205 F.3d 750, 759 (4th Cir.2000) (citations omitted).
On the first issue, the trial court correctly noted that misadvice regarding the right to testify can be a ground for relief if it wrongly prevents the defendant from testifying. See Hicks v. State, 666 So.2d 1021, 1022-23 (Fla. 4th DCA 1996). Nelson alleges in his motion that his attorney misadvised that he could be interrogated on his juvenile adjudications should he testify. Section 90.610(1)(b), Florida Statutes, specifically excludes using such adjudications to attack the credibility of the witness. Thus, if the only prior criminal proceedings against Nelson were juvenile proceedings, then the prosecutor could not have impeached him on prior criminal acts. Although the tidal court questioned Nelson on his decision not to testify, the court did not dispel counsel’s misadvice regarding the ability of the state to use his juvenile convictions to impeach him. Nelson’s claim of ineffective assistance on this issue was not conclusively refuted by the record.
Similarly, on the second issue, counsel did not impeach the victim’s testimony on key points. At trial the victim pointed to Nelson’s failure to close the bedroom door as grounds upon which the victim found his behavior suspicious and led him to believe that Nelson may have been involved. Yet he made a prior statement to police that Nelson had shut the door. Further, he made an earlier statement that Nelson had told him to call the police. Counsel may have simply forgotten to cover this point, because he mentioned in opening statement and then tried to refer to it in closing argument. However, the trial court sustained the state’s objection to this argument and instructed the jury to rely upon their recollection of the evidence, of which there was none, regarding Nelson’s exhortation to the victim to call the police. Therefore, the juiy did not have this important fact in assessing the credibility of the state’s case.
We cannot conceive that either the mis-advice or the failure to impeach the victim, if proven, amounted to trial strategy. In particular, the failure to bring out Nelson’s suggestion to call the police was not trial strategy, because counsel thought that he had brought it out when he had not. We conclude that Nelson identified issues of ineffective assistance which are not conclusively refuted by the record.
The trial court determined that even if counsel had provided ineffective assistance on these issues, they did not prejudice Nelson because there would be no reasonable probability of a different result. Where the trial court has summarily denied the motion on this basis, we review the question of prejudice to determine whether the record conclusively refutes the allegations of the motion. As to the misadvice preventing Nelson from testifying and providing an explanation as to why Sorrell may have implicated him, the court found that even if he had testified, his testimony regarding his relationship with Sorrell was insignificant, because Sor-rell offered statements implicating Nelson immediately after being questioned by the police. Moreover, the court found that Nelson’s testimony also would not change the victim’s evidence regarding Nelson’s involvement. We find this explanation insufficient. Sorrell was not questioned until days after the incident and could have *1199 concocted his story in order to secure favor from the police in his own case. Secondly, while the victim did tend to implicate Nelson, it was based upon suspicion and testimony which should have been impeached and cross-examined by defense counsel.
Impeachment of the victim with his pri- or statements would have significantly impacted the credibility of the victim’s version of events. The victim testified he was suspicious of Nelson because he didn’t close the bedroom door when he ran into it. Had the jury known that the victim had previously told the police that Nelson did close the door, this would have called his suspicions into question. It also would have discredited Sorrell, who testified that Nelson did not close the door to the bedroom as part of the pre-arranged plan. Secondly, a jury could well have developed a reasonable doubt as to Nelson’s guilt if defense counsel had brought out the fact that Nelson himself had told the victim to call the police. A jury could rightfully conclude that Nelson would not want the police called if he had set up the entire robbery.
On this record, the state has not conclusively refuted the motion on these issues, in that it appears there is at least a reasonable probability that the jury could have entertained a reasonable doubt as to Nelson’s guilt. We therefore reverse for an evidentiary hearing on these two issues. We affirm as to the other issues raised on the motion for postconviction relief.
POLEN and GROSS, JJ., concur.