PER CURIAM.
Todd Pierce appeals the summary denial of his motion filed pursuant to Florida Rule of Criminal Procedure 3.850, in which he raised two grounds for relief. We reverse and remand for further proceedings on ground one and affirm without comment on ground two.
Mr. Pierce was convicted of lewd and lascivious battery that occurred in September 2001 (count one) and lewd and lascivious molestation that occurred in November 2001 (count two). See § 800.04(4), (5)(a), Fla. Stat. (2001). The trial court imposed concurrent sentences of ten years’ imprisonment followed by five years’ sex offender probation on counts one and two. This court per curiam affirmed Mr. Pierce’s direct appeal. Pierce v. State, 36 So.3d 99 (Fla. 2d DCA 2010) (table).
Mr. Pierce was a deputy with the Pinel-las County Sherriffs Office (PCSO) assigned to a high school as a school resource officer. The victim was a fifteen-year-old student at the high school who, around the time of the incidents, would regularly visit Mr. Pierce’s office. In September 2001, Mr. Pierce was investigating an arson at the high school and went to the victim’s home to obtain a written statement. However, the victim said that she never gave a statement to Mr. Pierce but instead had sexual intercourse with him. She also testified that in November 2001, Mr. Pierce fondled her during one of her visits to his office and he kissed her during another visit, but she later admitted lying about the kissing incident.
The victim withdrew from high school and moved to Puerto Rico for two years. While in Puerto Rico, she suffered from memory loss and was hospitalized for routinely blacking out. In the meantime, the PCSO began investigating Mr. Pierce regarding an allegation of sexual battery unrelated to this victim. When Detective Randall Jones, the lead investigator in Mr. Pierce’s case, interviewed the victim in December 2005, she accused Mr. Pierce of these crimes for the first time.
At trial, both the victim and Detective Jones testified for the State. The State introduced no physical evidence or admissions and provided no eyewitnesses to the crimes besides the victim. In his rule 3.850 motion, Mr. Pierce alleged that any evidence or impeachment that would negate the victim’s credibility was crucial.
In ground one, Mr. Pierce claimed that his counsel was ineffective for failing to impeach the victim with her prior inconsistent statements, which would have weakened her credibility and supported his argument that she fabricated the allegations. The first subject of potential impeachment arose from the victim’s statements about *580 scars she observed when molested. She testified that she saw scars on Mr. Pierce’s abdomen and shoulder that were only visible when he removed his shirt. The State argued in closing that the only explanation for the victim’s ability to describe Mr. Pierce’s scars was that he removed his clothes before committing the offenses:
If she didn’t see him naked, how did she know he had this scar on his abdomen? How did she know about the scar on his shoulder? How did she know these things if he hadn’t undressed himself in front of her? There is no reasonable explanation other than he at some point in time, September 21st, undressed himself in front of her.
However, Mr. Pierce asserted that the victim could have been impeached with two prior inconsistent statements regarding her observation of his physical features. During Detective Jones’ initial interview with the victim, she twice denied observing scars on Mr. Pierce’s body. But Mr. Pierce alleged that after Detective Jones prodded the victim, she finally stated that Mr. Pierce might have a scar on his chest:
Q: Did you notice any scars from like a surgery or anything like that on his, on his body after he undressed?
A: No.
Q: Okay and um, I, I asked before if, if uh if uh Deputy Pierce had any marks or anything was there anything unusual about his body that, that you noticed? A: No because I wasn’t looking.
Q: I asked you about his body um can you tell me was he circumcised or not... you don’t know if he was or wasn’t?
A: No... You really want to know did I see something off his body.. .Did I really see something off his body...
Q: And did you?
A: Um, I think he has a scar.
Q: On his chest...
A: Um but I think he does I think he has a scar I’m not sure it’s been such a long time...
Q: Um so yes have you told and you believe he has a scar on his chest? .. .Ah, ah so you thought about this after I left so just part of you, you think he may have...
A: I think yeah...like on the bottom ... (around stomach).
Mr. Pierce’s trial counsel also deposed the victim while Detective Jones was not present. The victim described some of Mr. Pierce’s physical features, such as Mr. Pierce’s tattoos and the fact that he had “ugly feet.” But the victim failed to mention the scar when counsel asked whether she could remember if Mr. Pierce had any other abnormal physical features. Despite having knowledge of these statements, Mr. Pierce’s counsel failed to attack the victim’s credibility by impeaching her with these prior inconsistent statements.
The second subject of potential impeachment arose from the victim’s testimony that the reason for her delay in making the allegations against Mr. Pierce was that she was afraid of getting in trouble. However, the victim stated otherwise during her initial interview with Detective Jones:
Q: Okay did he tell you why you would get in trouble?
A: No, but I, I don’t give a damn I wouldn’t get in trouble, his ass will get in trouble, his ass would get in trouble right there and then, I was like okay whatever.. .And then after they came and seen me he talked to me he’s like oh what did you tell em I told em well I told them that I wasn’t kissing you.
Mr. Pierce asserted that counsel should have also impeached the victim with this prior inconsistent statement.
*581 Mr. Pierce argued that impeaching the victim with her prior inconsistent statements regarding both his scars and her fear of raising the allegations sooner was necessary to support his argument that the victim fabricated the allegations. He contended that the prior inconsistent statements in Detective Jones’ interview would have been especially helpful for arguing that the victim was coached to accuse Mr. Pierce. Had counsel fully impeached the victim’s credibility, Mr. Pierce asserted that the jury would have discredited the victim’s testimony and found him not guilty on counts one and two.
In summarily denying this claim, the postconviction court erred in finding that these prior inconsistent statements would have been inadmissible for the purposes of impeaching the victim’s credibility. See § 90.608(1), Fla. Stat. (2001); Marshall v. State, 68 So.3d 374, 375 (Fla. 5th DCA 2011) (“[A] party may attack a witness’s credibility by introducing a prior statement of the witness that is inconsistent with the witness’s present testimony. The prior inconsistent statement may be oral and unsworn.” (internal citations omitted)). The postconviction court noted that the victim did not affirmatively state in her deposition that she did not see Mr. Pierce’s scars. However, the victim’s statement would nevertheless have been admissible as a material circumstance that would have been natural to mention when asked to identify any abnormal physical features that she observed on Mr. Pierce’s body. See Charles W. Ehrhardt, Florida Evidence § 608.4 (2013 ed.) (“If the prior statement does not mention a material circumstance which would have been natural to mention in the statement, the omission in the statement should be admissible as an inconsistent statement.”). This negative impeachment could have allowed counsel to attack the victim’s credibility supporting Mr. Pierce’s argument that the victim fabricated the allegations. See Varas v. State, 815 So.2d 637, 640 (Fla. 3d DCA 2001) (“Negative impeachment is more likely deemed to be permissible where a witness appears to be fabricating.”) (citing Morton v. State, 689 So.2d 259, 264 (Fla.1997) (“[Cjaution should be exercised in permitting impeachment of a witness who has given favorable testimony but simply fails to recall every detail unless the witness appears to be fabricating.” (emphasis added)), receded from on other grounds, Rodriguez v. State, 753 So.2d 29 (Fla.2000)).
The postconviction court also found that Mr. Pierce’s claim regarding the victim’s description of Mr. Pierce’s scars during Detective Jones’ initial interview was conclusively refuted by the record since the victim ultimately described the scar in the interview after she was asked a third time. However, this finding fails to refute Mr. Pierce’s allegation that the victim failed to describe the scar after being asked the first two times. Mr. Pierce’s counsel would not have been precluded from impeaching the victim with her two earlier affirmative statements that she did not see a scar on Mr. Pierce’s body since counsel would have been able to read into evidence the entire portion of the interview in which Detective Jones eventually elicited her observation of the scar only after he asked a third time. See § 90.108(1) (“When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him or her at that time to introduce any other part or any other writing or recorded statement that in fairness ought to be considered contemporaneously.”). Therefore, Mr. Pierce’s claim — that impeachment with the full interview would have suggested to the jury that the victim learned about his scars from Detective Jones — is not conclusively refuted by the record.
*582 The postconviction court also noted that Mr. Pierce’s proposed impeachment would have been largely cumulative. Mr. Pierce’s counsel elicited on cross-examination that the victim was not actually fearful of bringing these allegations. When counsel asserted that the victim would have no need to fear Mr. Pierce while she was in Puerto Rico, she conceded that she did not report the incident because she wanted to put it behind her. Counsel also emphasized that the victim’s calm demeanor while speaking with Mr. Pierce during a controlled call showed the victim’s lack of fear. But this impeachment of the victim was introduced to prove that the victim’s testimony regarding her fear in bringing these allegations was false. Conversely, the victim’s prior inconsistent statements were admissible to attack the credibility of her trial testimony. See § 90.608(1); see also Charles W. Ehrhardt, Florida Evidence § 608.4 (2013 ed.) (“The argument is not that the prior statement is true and the testimony in court is false, but that because the witness has made two different statements concerning a material fact, the jury should not place great weight on the in-court testimony.”). Therefore, these prior inconsistent statements would have been admissible for the purpose of attacking her credibility since they were not cumulative to other facts that Mr. Pierce’s trial counsel elicited on cross-examination. See Nelson v. State, 126 So.3d 1195, 1199 (Fla. 4th DCA 2012) (reversing summary denial of claim that counsel was ineffective for failing to impeach the victim with his prior statements, which “would have significantly impacted the credibility of the victim’s version of events”); Bentley v. State, 867 So.2d 515, 516 (Fla. 1st DCA 2004) (finding that the failure to impeach the State’s key witness with a prior inconsistent statement constituted deficient performance despite counsel’s impeachment of the witness with his prior convictions and motives).
Based on the foregoing, the summary record does not conclusively refute Mr. Pierce’s claim that counsel’s failure to impeach the victim undermines confidence in the outcome of his trial so as to warrant summary denial of his claim. See Fla. R. Crim. P. 3.850(d) (2012) (current version at Fla. R. Crim. P. 3.850(f)). Counsel might have made a tactical decision in not introducing these prior inconsistent statements, but such a decision is not apparent from the face of the record. See Sampson v. State, 751 So.2d 602, 602 (Fla. 2d DCA 1998) (“To conclude that an action or inaction taken by a trial attorney was a strategic decision generally requires an eviden-tiary hearing.”). Also, Mr. Pierce will be entitled • to postconviction relief only if he meets the rather difficult burden of establishing a reasonable probability, sufficient to undermine confidence in the outcome of his trial, that but for counsel’s errors the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (“The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.”).
Accordingly, we reverse the denial of ground one and remand for the postconviction court to attach portions of the record that conclusively refute Mr. Pierce’s claim or hold an evidentiary hearing.
Affirmed in part, reversed in part, and remanded.
ALTENBERND, CASANUEVA, and LaROSE, JJ., Concur.