# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

BAKARI DEONTE PARKS,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2022-0987

_____

May 15, 2024

Appeal from the Circuit Court for Hillsborough County; Michelle Sisco, Judge.

Jaime J. Garcia, III, of Garcia Law Group, P.A., Tampa, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Sonia C. Lawson, Assistant Attorney General, Tampa, for Appellee.

PER CURIAM.

Following an evidentiary hearing, the postconviction court denied Bakari Deonte Parks' motion for postconviction relief. *See* Fla. R. Crim. P. 3.850. We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A); 9.141(b)(3). Having carefully reviewed the record, we affirm. We write only to address Mr. Parks' argument that trial counsel was ineffective for interfering with his right to testify at trial.

## **Background**

Mr. Parks and Orie Chandler engaged in a spirited, high-stakes dice game. Mr. Parks won. Mr. Chandler, not a gracious loser, beat up

Mr. Parks.  Humiliated, Mr. Parks retrieved a firearm from a nearby apartment and, in view of several witnesses, fired two shots at Mr. Chandler.  Apparently, Mr. Parks was better with dice than guns; he missed Mr. Chandler but struck a four-year-old bystander.

The State charged Mr. Parks with attempted second-degree murder (Count 1) and attempted aggravated battery (Count 2).  A jury found him guilty of the lesser included offense of attempted voluntary manslaughter on Count 1 and guilty as charged on Count 2.  The trial court sentenced him to concurrent terms of five years' imprisonment on Count 1 and a mandatory minimum twenty-five years' imprisonment on Count 2.  We affirmed his direct appeal.  *Parks v. State*, 209 So. 3d 583 (Fla. 2d DCA 2016) (table decision).

Through counsel, Mr. Parks timely filed a five-claim motion for postconviction relief.  *See* Fla. R. Crim. P. 3.850(b).  More particularly, Mr. Parks alleged that "[t]rial counsel negligently advised [him] not to testify on his own behalf."  He complained that a prosecution witness testified that before the shooting Mr. Parks ominously warned Mr. Chandler, "I hope your life was worth those few dollars."  Mr. Parks contended that his "theory of the case was that he was <u>not</u> [even] present" and "continuously told [trial counsel] he did not say those words" and "request[ed] that he be permitted to take the stand [to] tell the jury what was said and not said."  Seemingly, Mr. Parks "was the only witness who could refute this claim and corroborate [his] theory of the case."  However, trial counsel persuaded Mr. Parks otherwise, allegedly telling him that "he had already demonstrated [Mr. Parks'] innocence and his final argument would win the case."

After an evidentiary hearing on all claims, the postconviction court denied the motion.  In relevant part, the postconviction court found as follows:

After reviewing the allegations, the testimony, evidence and arguments presented at the . . . evidentiary hearing, the court file, and the record, the [postconviction court] finds [trial counsel]'s testimony more credible than that of [Mr. Parks]. The [postconviction court] finds [trial counsel] discussed with [Mr. Parks] his right to testify or not testify at trial, including that it was his decision, but that he recommended that he not testify in light of the fact that he admitted to [trial counsel] that he was the shooter. The [postconviction court] finds that there was a discussion during the trial on the record, about him testifying in his own defense. The [postconviction court] finds that [trial counsel] took additional time during the trial to discuss with [Mr. Parks] whether he was going to testify, but the strategy was always that he was not going to testify unless something changed. The [postconviction court] finds that based on [trial counsel]'s testimony, the evidence came out at trial as they had expected with no real substantive changes regarding how the evidence was presented. The [postconviction court] finds that the primary reason [trial counsel] recommended to [Mr. Parks] that he not testify at trial was because he admitted he was the shooter. Consequently, the [postconviction court] finds [Mr. Parks] failed to prove that [trial counsel] acted deficiently or any resulting prejudice when after [Mr. Parks] admitted to [trial counsel] that he was the shooter, [trial counsel] properly advised [Mr. Parks] that he should not testify because [trial counsel] was not going to allowing [sic] [Mr. Parks] to lie on the stand and [Mr. Parks] assured the [trial c]ourt during the trial that he did not want to testify.

### Pleading Standard &
### Appellate Review Following an Evidentiary Hearing

To plead a facially sufficient claim for ineffective assistance of counsel, a defendant must allege sufficient facts to establish that his trial counsel's performance was deficient and that he was prejudiced thereby. *Martin v. State*, 205 So. 3d 811, 812 (Fla. 2d DCA 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). The rule requires that the movant "include . . . a brief statement of the facts and other conditions relied on in support of the motion." *See* Fla. R. Crim. P. 3.850(c)(7).

3

"As to the first prong, deficient performance, a defendant must establish conduct on the part of counsel that is outside the broad range of competent performance under prevailing professional standards." *Gore v. State*, 846 So. 2d 461, 467 (Fla. 2003). To establish the prejudice prong, the defendant "must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Downs v. State*, 453 So. 2d 1102, 1108 (Fla. 1984) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability of a different result 'is a probability sufficient to undermine confidence in the outcome.' " *Hurst v. State*, 18 So. 3d 975, 1001 (Fla. 2009) (quoting *Strickland*, 466 U.S. at 694). When a defendant fails to establish one prong of the *Strickland* analysis, it is unnecessary to examine whether the other prong has been established. *See Hodges v. State*, 213 So. 3d 863, 870 (Fla. 2017).

Following an evidentiary hearing, we review the denial of a postconviction relief motion to determine whether competent, substantial evidence supports the postconviction court's findings of fact. *Mosley v. State*, 209 So. 3d 1248, 1262 (Fla. 2016). "Competent substantial evidence is tantamount to legally sufficient evidence." *R.F. v. Fla. Dep't of Child. & Fams.*, 770 So. 2d 1189, 1192 (Fla. 2000); *see also Savage v. State*, 120 So. 3d 619, 621 (Fla. 2d DCA 2013) (noting that "competent" refers to admissibility, while "substantial" requires that there be some material or relevant evidence having definite probative value).

> As long as the trial court's findings are supported by competent substantial evidence, "this Court will not substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court."

*Blanco v. State*, 702 So. 2d 1250, 1252 (Fla. 1997) (quoting *Demps v. State*, 462 So. 2d 1074, 1075 (Fla. 1984)). We review conclusions of law

4

de novo. *See Schofield v. State*, 67 So. 3d 1066, 1072 (Fla. 2d DCA 2011) ("[T]his court reviews the postconviction court's application of the facts to the law de novo.").

**Discussion**

Mr. Parks maintains that trial counsel misadvised him not to testify. However, the factual basis underlying this claim has perceptibly shifted. No longer does Mr. Parks argue that counsel's advice was strategically unsound. *See, e.g., Roberts v. State*, 307 So. 3d 808, 811 (Fla. 2d DCA 2018) ("Although he was able to pursue his theory of innocence by impeaching the victim and the *Williams*[ *v. State*, 110 So. 2d 654, 663 (Fla. 1993),] rule witness and by introducing extrinsic evidence of an alibi, which was that he could not have committed the crimes with which he was charged because of his work schedule and the presence of other people in the same location at the time the abuse occurred, Mr. Roberts alleges that he could and would have directly denied the statements made by the witnesses and offered his own account of things. If credited by a jury in the way Mr. Roberts has alleged his testimony would have been credited—and, we stress, as far as our limited postconviction record is concerned—that testimony could have made a difference.").

Instead, for the first time, Mr. Parks asserts that trial counsel erroneously "inform[ed Mr.] Parks not to testify . . . because he would be impeached by juvenile adjudications." Mr. Parks maintains that he "relied on [this] incorrect advice . . . to involuntarily decide not to testify." The claim asserted here is different than that raised in the postconviction court. *Compare Roberts*, 307 So. 3d at 810 ("Mr. Roberts alleged that his trial counsel was ineffective for interfering with his right to testify. He asserted that although he wanted to testify, his counsel 'did not give [him] the option . . . and simply insisted that [he] would not testify' and,

5

further, that his counsel did not prepare him in the event he did end up testifying." (alterations in original)), *with Jenkins v. State*, 378 So. 3d 1260, 1262 (Fla. 2d DCA 2024) ("To start, if counsel had advised Jenkins, as he alleged, that the jury would have automatically been told about the specific nature of his prior offenses, then that was deficient performance."), *Penton v. State*, 262 So. 3d 253, 257 (Fla. 2d DCA 2018) (holding that the record did not refute the defendant's allegation of prejudice that counsel told him that the State would be able to impeach him with "every detail" of his convictions even though the jury may not have ultimately believed his testimony), *and Tyler v. State*, 793 So. 2d 137, 141 (Fla. 2d DCA 2001) ("Where counsel incorrectly informs a defendant regarding the use of prior convictions as impeachment, specifically, that upon testifying the jury will hear the specific nature of the prior convictions, and the defendant shows that because of the misinformation he did not testify, he has satisfied the deficient performance prong of an ineffective assistance of counsel claim.").

Ample authority cautions Mr. Parks from raising new claims on appeal. *See Hutchinson v. State*, 17 So. 3d 696, 703 n.5 (Fla. 2009) ("Even if we were to accept Hutchinson's contention that he is actually arguing ineffectiveness due to trial counsel's failure to present evidence of his innocence to the jury, such a claim is not cognizable on this appeal because it is being raised for the first time."); *Connor v. State*, 979 So. 2d 852, 866 (Fla. 2007) ("This confrontation issue was not raised at the trial level and was not raised in the 3.851 motion. Because the issue may not be heard for the first time on appeal of a postconviction motion, we deny relief on this issue."); *Shuler v. State*, 160 So. 3d 459, 459 (Fla. 2d DCA 2014) ("We affirm the postconviction court's order denying Curtis Shuler's motion for postconviction relief . . . . [T]his court cannot

6

consider arguments raised for the first time on appeal . . . ." (citations omitted)).

Because Mr. Parks' argument on appeal differs from his argument in the postconviction court, it is not preserved for our review. *Cf. Bilotti v. State*, 27 So. 3d 798, 800 (Fla. 2d DCA 2010) ("Because Bilotti asserts no error as to those [summarily and nonsummarily denied] grounds, we agree that he abandoned and waived any claim of error relating to those grounds."); *Prince v. State*, 40 So. 3d 11, 12 (Fla. 4th DCA 2010) ("After holding an evidentiary hearing, the trial court denied appellant's other postconviction claims in a thoroughly-detailed order. Appellant has not raised any error in the denial of these issues in his brief, and they are waived."). Consequently, Mr. Parks' new and untested claim may not be raised for the first time to us.

## Conclusion

We affirm the postconviction court's rule 3.850 order.

Affirmed.

NORTHCUTT and VILLANTI, JJ., Concur.

LaROSE, Judge, Specially Concurring.

I concur in the affirmance of the postconviction court's order. However, other considerations support affirmance on the discrete issue of Mr. Park's right to testify. *See MacNeill v. O'Neal*, 238 So. 2d 614, 615 (Fla. 1970) ("[A] party who is content with the judgment below need not assign error in order to support that judgment and is not limited in the appellate courts to the theories of recovery stated by the trial court."); *Freeman v. State*, 373 So. 3d 1255, 1257 n.2 (Fla. 1st DCA 2023) ("[A]n appellee need not present to the trial court the grounds on which the appellate court affirms the trial court's ruling."). Because discussion of

7

these matters may help postconviction courts, movants, and practitioners, I write to address these ancillary matters.

## I. The Record Conclusively Refutes Mr. Parks' Claim

Mr. Parks claims that trial counsel was ineffective "[f]or informing [Mr.] Parks not to testify in his own trial because he would be impeached by juvenile adjudications." Section 90.610(1)(b), Florida Statutes (2014), prohibits using juvenile adjudications to attack witness credibility. *See Nelson v. State*, 126 So. 3d 1195, 1198 (Fla. 4th DCA 2012). And misadvice regarding the right to testify can be a ground for postconviction relief if it prevents the defendant from testifying. *See Tarpley v. State*, 566 So. 2d 914, 915 (Fla. 2d DCA 1990); *e.g.*, *Jenkins*, 378 So. 3d at 1262-63; *Penton*; 262 So. 3d at 257; *Tyler*, 793 So. 2d at 141. It is undoubtedly true that a defendant's decision to testify is his or her own to make. *See Puglisi v. State*, 112 So. 3d 1196, 1205 (Fla. 2013) ("Whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal are 'all the Supreme Court has said about fundamental rights that belong solely to the defendant for decision.' " (quoting *United States v. Burke*, 257 F.3d 1321, 1323 (11th Cir. 2001))).

A portion of the trial transcript squarely defeats Mr. Parks' new claim. During a break, trial counsel and the trial court discussed Mr. Parks' right to testify. In that context, they discussed possible impeachment with prior convictions:

> TRIAL COUNSEL: I agree that he does have a juvenile history. . . .
>
>      . . . .
>
> TRIAL COUNSEL: He does have juvenile priors, but in terms of adult priors no, I've discussed those issues with him.
>
> TRIAL COURT: **Okay. If he took the witness stand, the juvenile priors could not be used again[st] him, correct?**
>
> TRIAL COUNSEL: **Right.**

8

TRIAL COURT: **Okey. So there would not be any certified copies of conviction that could be used for impeachment purposes?**

TRIAL COUNSEL: **Right.**

(Emphasis added.) Mr. Parks was present for this exchange. The trial court then directly addressed Mr. Parks about his right to testify. The trial court explained:

> **And I want to clear up one thing, Mr. Parks, just to make sure you and I are on the same page. When I say that the State cannot impeach you regarding any prior felony convictions, I mean that neither your attorney nor the State will be able to say "have you ever been convicted of a felony," because you haven't been. However, if you do take the stand you'll be subject to direct examination by your counsel, and I would anticipate a vigorous cross-examination by the State regarding what happened.**
>
> So I don't want to in any way be misleading you regarding when I said the State couldn't impeach you, I meant just to a very decreet [sic], limited issue. If you do take the stand, the State will absolutely have the opportunity to cross-examine you regarding your testimony on the witness stand and that will all occur in front of the jury, so that's what you need to be thinking about.

(Emphasis added.)

Trial counsel and the trial court, with Mr. Parks present, recognized that impeachment with juvenile adjudications was not fair game.

## II. The Mutual Decision Not to Testify and Perjury

Our record reflects that, notwithstanding his claims to the contrary, Mr. Parks and trial counsel decided that his testimony was unnecessary. Furthermore, the record reflects that trial counsel adopted a considered and reasonable trial strategy in keeping Mr. Parks off the stand. *See Sampson v. State*, 751 So. 2d 602, 602 (Fla. 2d DCA 1998)

9

("To conclude that an action or inaction taken by a trial attorney was a strategic decision generally requires an evidentiary hearing.").

At the evidentiary hearing, trial counsel explained that Mr. Parks "wavered" over whether he would testify. He knew, however, that the decision was his to make. In fact, at the evidentiary hearing trial counsel explained that

> from the [pretrial] meeting, the plan was always that he would not testify. And I know there was some level of wavering from him, but I don't believe he ever really changed his position. And again, when Judge Sisco [colloquied] him, he answered it was his opinion that he did not want to testify.

Trial counsel explained to Mr. Parks how the case had unfolded up to that point and informed him of the advantages and disadvantages of testifying: "We would go over the evidence, we go over what the testimony has been, and we go over benefits and detriments and all that." The record reflects that Mr. Parks, in consultation with trial counsel, elected not to testify.

> We are told that

> [w]hen a defendant asserts that his counsel was ineffective for interfering with his right to testify, there are two separate questions for the postconviction court to consider. The first is whether the defendant voluntarily agreed with counsel not to testify in his own defense. If the answer to that question is yes, then the postconviction court must also consider whether counsel's advice to the defendant was deficient "because no reasonable attorney would have discouraged" the defendant from testifying.

*Roberts*, 307 So. 3d at 811 (citations omitted) (quoting *Lott v. State*, 931 So. 2d 807, 819 (Fla. 2016)). The answer to the first question is "Yes." And the answer to the second question is "No."

Obviously, trial counsel had a very good reason to not call Mr. Parks to the witness stand. Mr. Parks admitted he was the shooter shortly before trial. At the evidentiary hearing, trial counsel recounted:

10

[Mr. Parks] told [co-trial counsel] and myself that his prior version of events that he was not the shooter was incorrect and he was lying to us and he in fact was the shooter. And he told us where he got the gun and he told us what happened. And so we had to pivot a little bit from our [trial] strategy. But . . . he was admitting in confidence that he was the shooter.

Trial counsel explained that Mr. Parks' admission changed the trial strategy:

[T]here may have been a way to fashion it around that, but that he would always be open to the question were you in fact the shooter. Basically, . . . we kind of decided that we were going to pivot towards burden of proof, State has to prove the case beyond a reasonable doubt type argument, and we also were going to focus on causation. But we kind of pivoted away from the fact that, you know, it was a mis-ID case.

. . . .

It doesn't mean that we stop trying hard for him. He even expressed a concern at that meeting that we were going to stop working hard for him because we knew the true facts, and I assured him we would not do that. But it does change things a little bit because, for example, it severely limits, if not precludes, him from testifying because all it takes is a prosecutor to ask him that question and it puts him in a very bad spot where he's either misrepresenting to the court and/or having to answer truthfully under oath when it's not advantageous to his defense.

Additionally, Mr. Parks' admission rendered trial counsel's advice legally sound. Mr. Parks' potential testimony presented pitfalls. First, "[r]egardless of the client's wishes, defense counsel must refuse to aid the defendant in giving perjured testimony and also refuse to present the testimony of a witness that he knows is fabricated." *Sanborn v. State*, 474 So. 2d 309, 312 (Fla. 3d DCA 1985). Second, had the prosecutor asked Mr. Parks "the question" on cross-examination, a truthful answer would have devastated his defense.

11

Trial counsel was truly stuck in the "worst dilemma," facing a legal and ethical Catch-22. Trial counsel handled this tricky situation with aplomb, and, in this context, he was not deficient for advising Mr. Parks not to testify at trial.

_____

Opinion subject to revision prior to official publication.