# Supreme Court of Florida

_____

No. SC2026-0251

_____

**BILLY LEON KEARSE,**

Appellant,

vs.

**STATE OF FLORIDA**

Appellee.

_____

No. SC2026-0250

_____

**BILLY LEON KEARSE,**

Petitioner,

vs.

**STATE OF FLORIDA**

Respondent.

February 25, 2026

PER CURIAM.

Billy Leon Kearse, a prisoner under sentence of death for whom a death warrant has been signed and an execution set for March 3, 2026, appeals the circuit court's final order summarily

denying his sixth successive motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.851.  Kearse also petitions this Court for a writ of habeas corpus and has filed two pending motions for a stay of execution.  We have jurisdiction.  *See* art. V, § 3(b)(1), (9), Fla. Const.; *see also State v. Fourth Dist. Ct. of Appeal*, 697 So. 2d 70, 71 (Fla. 1997) (holding "that in addition to our appellate jurisdiction over sentences of death, we have exclusive jurisdiction to review all types of collateral proceedings in death penalty cases").  For the reasons that follow, we affirm the circuit court's order denying relief below, and we deny Kearse's habeas petition and motions for a stay of execution.

## I.  BACKGROUND

Kearse was charged with first-degree murder and robbery with a firearm in the 1991 killing of Fort Pierce police officer Danny Parrish.  After Parrish stopped Kearse for driving the wrong way down a one-way street, Kearse failed to produce a driver's license and gave him false names.  Parrish then ordered Kearse to exit the car and attempted to handcuff him.  Kearse resisted, grabbed Parrish's gun, and fired fourteen shots, thirteen of which struck Parrish.  Parrish later died from his injuries at the hospital.  Kearse

- 2 -

was apprehended shortly thereafter and confessed to shooting Parrish. *Kearse v. State*, 662 So. 2d 677, 680 (Fla. 1995).

The jury convicted Kearse of first-degree murder and robbery with a firearm. After this Court affirmed those convictions but granted Kearse a new penalty phase, *see id.* at 685-86, a second penalty phase jury unanimously recommended that Kearse be sentenced to death in 1996. The trial court followed that recommendation, finding two aggravating factors: (1) the murder was committed during a robbery; and (2) the murder was committed to avoid arrest and hinder law enforcement, and the victim was a law enforcement officer engaging in the performance of his official duties (merged into one factor). *Kearse v. State*, 770 So. 2d 1119, 1123 (Fla. 2000). The trial court determined that the mitigating circumstances—Kearse's age at the time of the murder; the fact that he confessed; his acceptable behavior at trial; and a number of circumstances relating to his difficult childhood—were insufficient to outweigh the aggravating factors. *Id.*

On direct appeal after the resentencing, this Court affirmed Kearse's death sentence, *id.* at 1135, which became final when the United States Supreme Court denied certiorari review in 2001, *see*

*Kearse v. Florida*, 532 U.S. 945 (2001); Fla. R. Crim. P. 3.851(d)(1)(B) ("For purposes of this rule, a judgment is final . . . on the disposition of the petition for writ of certiorari by the United States Supreme Court, if filed.").

In the decades since, Kearse has unsuccessfully challenged his convictions and sentence in state and federal court. *See Kearse v. State*, 969 So. 2d 976, 981 (Fla. 2007) (affirming denial of initial motion for postconviction relief and denying first state habeas petition); *Kearse v. State*, 11 So. 3d 355 (Fla. 2009) (affirming denial of successive motion for postconviction relief); *Kearse v. State*, 75 So. 3d 1244 (Fla. 2011) (unpublished table decision) (affirming denial of successive motion for postconviction relief); *Kearse v. Tucker*, 100 So. 3d 1148 (Fla. 2012) (unpublished table decision) (denying second state habeas petition); *Kearse v. State*, No. 561991CF000136A (Fla. 19th Cir. Ct. July 15, 2016) (dismissing successive motion for postconviction relief); *Kearse v. State*, No. SC17-346, 2017 WL 5951617, at *1 (Fla. May 9, 2017) (dismissing for lack of jurisdiction appeal of dismissal of successive motion for postconviction relief); *Kearse v. State*, 252 So. 3d 693, 694 (Fla. 2018) (affirming denial of successive motion for postconviction

- 4 -

relief); *Kearse v. Sec'y, Fla. Dep't of Corr.*, 2022 WL 3661526, at *1 (11th Cir. Aug. 5, 2022) (affirming denial of federal habeas relief).

Governor Ron DeSantis signed Kearse's death warrant on January 29, 2026. Kearse then filed a sixth successive motion for postconviction relief under rule 3.851, raising three claims: (1) there is newly discovered evidence that Kearse was unconstitutionally deprived of a fair penalty phase proceeding because the jury was improperly influenced by the presence of uniformed law enforcement officers in the courtroom; (2) Kearse's death sentence is unconstitutional because newly discovered evidence establishes that he is intellectually disabled; and (3) the truncated nature of Florida's death warrant process violates due process. The circuit court summarily denied these three claims. The circuit court also denied Kearse's related motion for a juror interview, his motion to declare unconstitutional the "clear and convincing evidence" standard of proof for establishing intellectual disability set forth in section 921.137(4), Florida Statutes, and his post-warrant public records requests made on February 9, 2026, under Florida Rule of Criminal Procedure 3.852. Kearse now contests the denial of claims one and two of his postconviction motion, and in the course

of his challenge, he also asserts that the circuit court erred in denying his motion to interview a juror, his motion to declare section 921.137(4) unconstitutional, and his post-warrant public records requests filed on February 9, 2026.

## II.  ANALYSIS

### A.  Claim That Newly Discovered Evidence Shows That Kearse Was Unconstitutionally Deprived of a Fair Penalty Phase Because the Jury Was Subject to Improper Influences

Kearse first argues that the circuit court erred in summarily denying his claim that he was unconstitutionally deprived of a fair penalty phase proceeding in 1996 because the jury was subject to improper external influences.  In support of this claim, Kearse asserted that a recent Facebook comment posted by a penalty phase juror (Juror M) constitutes newly discovered evidence that (1) uniformed law enforcement officers were present in the 1996 courtroom; and (2) their presence created an atmosphere that influenced Juror M, such that Kearse did not receive a fair trial under the Sixth and Fourteenth Amendments of the U.S. Constitution.  Juror M's social media comment, posted on February 3, 2026, reads in full:

I was a Juror at the second trial, for a possible resentencing of the young man that killed Danny. At the end of that 2nd trial, his death sentence remained. It was one of the hardest things I've ever done, but there was no doubt it was the right sentence. I'll never forget the respect and support shown to Danny in that courtroom. Every day, no matter how long the trial went, the back of the courtroom was filled with Leo's[1] from every city and county in the state, so much support and respect from his fellow Leo's. They would stand there for several hours, never wavering. I remember silently hoping that his family and friends would know how much he was loved.

For the reasons explained below, we agree with the circuit court's conclusion that this claim is untimely and procedurally barred.

Florida Rule of Criminal Procedure 3.851(d)(1) requires that defendants file any motion to vacate judgment of conviction and sentence of death within one year after their judgment and sentence become final. Because Kearse's successive postconviction claim was filed well beyond the one-year time limit for filing such motions, Kearse must establish that "the facts on which the claim is predicated were unknown [by him and his attorney] . . . and could not have been ascertained by the exercise of due diligence." Fla. R.

---

1. In this context, the term "Leo's" presumably refers to "law enforcement officers."

Crim. P. 3.851(d)(2)(A). Moreover, "any claim of newly discovered evidence in a death penalty case must be brought within one year of the date such evidence was discovered or could have been discovered through the exercise of due diligence." *Glock v. Moore*, 776 So. 2d 243, 251 (Fla. 2001).

Kearse's claim is untimely because it is premised on facts that could have been discovered decades ago with due diligence. His second penalty phase occurred in 1996, and our affirmance of his death sentence became final in 2001. The presence of uniformed officers in the courtroom during the second penalty phase would have been readily observable. To the extent that the officers' presence could have raised constitutional concerns, Kearse had ample opportunity to investigate any potential undue influence on the jury. Whatever the relevance of Juror M's Facebook post, it merely discloses information that due diligence could have uncovered long ago.

In addition, this Court has held that "in an active [death] warrant case, a postconviction claim that could have been raised in a prior proceeding is procedurally barred." *Rogers v. State*, 409 So. 3d 1257, 1263 (Fla.), *cert. denied*, 145 S. Ct. 2695 (2025). This rule

applies to Kearse's claim here, which he could have raised long ago on appeal or in an earlier postconviction proceeding. The circuit court was right to deny Kearse's claim as procedurally barred.

## B. Motion for a Juror Interview

Kearse also argues that the circuit court erred in denying his February 9, 2026, motion to interview Juror M. Because Kearse failed to establish good cause for filing his motion nearly three decades late or to assert a legally valid basis for the juror interview, the circuit court did not err in denying his motion.

We review the circuit court's denial of Kearse's motion for a juror interview for abuse of discretion. *Anderson v. State*, 18 So. 3d 501, 519 (Fla. 2009). Florida Rule of Criminal Procedure 3.575 requires that a motion to interview a juror be filed "*within 10 days* after the rendition of the verdict, unless good cause is shown for the failure to make the motion within that time." Fla. R. Crim. P. 3.575 (emphasis added). As we recently explained in *Bates v. State*, 398 So. 3d 406, 407 (Fla. 2024), "the timing contemplated by the rule suggests that the best time for a rule 3.575 motion is on the heels of trial, and thus in connection with a direct appeal, when memories are fresh and facts more readily ascertained." A rule

3.575 motion requires that a party have reason to believe that the verdict may be subject to legal challenge, and it "must set forth allegations that are not merely speculative or conclusory, or concern matters that inhere in the verdict." *Foster v. State*, 132 So. 3d 40, 65 (Fla. 2013).

Of course, Kearse filed the motion at issue here decades after the expiration of the rule 3.575 deadline. To excuse that delay, Kearse relies exclusively on Juror M's February 3, 2026, social media post. He contends that the post reveals improper external influences on the jury and therefore justifies interviewing Juror M now. But any factual issues raised by Juror M's post—whether about the presence of officers in the courtroom or her reaction to that presence—could have been discovered long ago with due diligence. Kearse has not demonstrated good cause under rule 3.575 to excuse his decades-long delay in seeking a juror interview. *See Bates*, 398 So. 3d at 407-08 (finding that Bates's failure to establish good cause for the long delay was "the end of the matter"). We find no abuse of discretion in the circuit court's denial of Kearse's motion.

## C. Public Records Claims

Also related to claim one of his successive motion, Kearse appeals the circuit court's denial of his three post-warrant public records requests made on February 9, 2026, under Florida Rule of Criminal Procedure 3.852(i) to the Office of the Attorney General (OAG), the Office of the State Attorney for the Nineteenth Judicial Circuit (SAO19), and the St. Lucie County Sheriff's Office (SLCSO). Kearse made these requests six days after the February 3, 2026, deadline imposed by the circuit court. Kearse sought records relating to any communication between those three agencies and Juror M. Kearse asserted that he sought these records because he believed they would support his claim that he was deprived of a fair penalty phase proceeding because Juror M was subject to the improper influence of uniformed law enforcement officers in the courtroom. The circuit court sustained the agencies' objections and denied the requests.

We review the denial of requests for public records for abuse of discretion, *Muhammad v. State*, 132 So. 3d 176, 200 (Fla. 2013), and find none here. We agree with the circuit court that Kearse's requests were untimely filed six days after the deadline imposed by

the circuit court's scheduling order. Kearse gave no explanation of why he filed the requests six days late, especially given that he found Juror M's post only nine hours after the deadline had expired. Nor did he seek leave of the court to file a late demand.

Kearse explained that he sought these additional records because an Assistant Attorney General (AAG) in this case had allegedly responded to articles and social media comments on Facebook regarding the signing of Kearse's death warrant.[2] Kearse asserted that the fact that Juror M's post was deleted within twenty-four hours of the AAG's alleged comment(s) "raise[d] the question of whether there was some sort of misconduct in contacting the juror." Even accepting Kearse's timeline and factual allegations as true, his theory that a state or county agency engaged in misconduct by contacting Juror M about her post is purely speculative and does not provide a basis for a colorable claim of relief. Kearse's February 9, 2026, records requests amount to a fishing expedition rather than a proper basis for obtaining post-

---

2. At the hearing on his February 9 requests, Kearse claimed to have in his possession the social media comments posted by the AAG, but they do not appear in the record.

- 12 -

warrant public records under rule 3.852. *See, e.g., Dailey v. State*, 283 So. 3d 782, 792 (Fla. 2019) ("Rule 3.852 is 'not intended to be a procedure authorizing a fishing expedition for records.' " (quoting *Bowles v. State*, 276 So. 3d 791, 795 (Fla. 2019))). Under these circumstances, the circuit court did not abuse its discretion in denying Kearse's requests for additional public records from the OAG, SAO19, or SLCSO filed on February 9, 2026.

Likewise, we reject Kearse's argument that denying him access to these records violates his rights to due process and equal protection under the Eighth and Fourteenth Amendments of the U.S. Constitution and the corresponding provisions of the Florida Constitution. *Cole v. State*, 392 So. 3d 1054, 1066 (Fla.) ("Vague and conclusory allegations on appeal are insufficient to warrant relief." (citing *Heath v. State*, 3 So. 3d 1017, 1029 n.8 (Fla. 2009))), *cert. denied*, 145 S. Ct. 109 (2024).

### D. Claim That Kearse's Death Sentence Is Unconstitutional Based on Newly Discovered Evidence That Kearse Is Intellectually Disabled

Kearse also argues that the circuit court erred in summarily denying claim two of his successive motion, in which he argued that he is intellectually disabled and categorically exempt from execution

- 13 -

under *Atkins v. Virginia*, 536 U.S. 304 (2002) (holding that the Eighth Amendment prohibits execution of the intellectually disabled). In support of this claim, Kearse provided a report by Robert H. Ouaou, Ph.D., a clinical and forensic neuropsychologist, dated February 8, 2026, indicating that Kearse obtained a full-scale IQ score of 75 on the Wechsler Adult Intelligence Scale, Fifth Edition (WAIS-5)—the most recent revision of the widely used Wechsler Adult Intelligence Scale—administered to him after his death warrant was signed. Kearse argued that the IQ score he obtained on the WAIS-5 on February 2, 2026,[3] constitutes newly discovered evidence that he is intellectually disabled.

"[T]o establish intellectual disability as a bar to execution, a defendant must demonstrate (1) significantly subaverage general

---

3. The WAIS is one of two tests that can be used to establish "significantly subaverage general intellectual functioning," the first prong of section 921.137(1), as indicated in *Florida Administrative Code* Rule 65G-4.011. Although the WAIS-5 is the most recent revision of that test, Kearse's argument framing the WAIS-5 as a "new" test fails because psychological tests are routinely revised to reflect changes in the population and other factors, and such revisions do not automatically render results on earlier tests invalid. *See Hampton v. State*, 219 So. 3d 760, 777-79 (Fla. 2017) (treating both a defendant's WAIS-IV results from 2013 and WAIS results from 1989 as generally valid, admissible evidence).

intellectual functioning; (2) concurrent deficits in adaptive behavior; and (3) manifestation of the condition before age eighteen." *Haliburton v. State*, 331 So. 3d 640, 646 (Fla. 2021). "Significantly subaverage general intellectual functioning" requires performance two or more standard deviations below the mean on an approved standardized intelligence test, and "an 'IQ test result of 75 [i]s squarely in the range of potential intellectual disability.' " *Wright v. State*, 256 So. 3d 766, 771 (Fla. 2018) (alteration in original) (quoting *Brumfield v. Cain*, 576 U.S. 305, 315 (2015)). Further, "adaptive behavior" refers to the degree to which an individual meets standards of personal independence and social responsibility as expected of his age, cultural group, and community. § 921.137(1), Fla. Stat.

Earlier IQ results from the original trial and resentencing established Kearse had an IQ score of 79, while in eighth grade he obtained an IQ score of 78. These scores placed Kearse outside the intellectual disability range. At his 1996 penalty phase, Kearse's own expert testified that although Kearse had low-level intelligence, emotional problems, learning disabilities, and brain dysfunctioning, he was not intellectually disabled. *Kearse*, 969 So. 2d at 991-92.

- 15 -

And over the past twenty-five years that Kearse has been engaged in postconviction litigation, he has never raised a claim that he is intellectually disabled under *Atkins*. At most, in his first state habeas petition, Kearse argued that *Atkins* should be extended to him based on "his age, low level of intellectual functioning, and mental and emotional impairments," but even then, he did not assert that he was intellectually disabled. *Kearse*, 969 So. 2d at 991.

Kearse argues that his intellectual disability claim is timely now because his newly obtained IQ score of 75 on the WAIS-5 constitutes newly discovered evidence. And he claims that he could not have discovered this IQ score earlier because the WAIS-5 was released in 2024. But Kearse's last-minute, post-warrant IQ score does not qualify as newly discovered evidence, and the circuit court did not err in denying this untimely, procedurally barred, and legally insufficient claim.

Kearse's intellectual disability claim is untimely because it was raised well beyond the one-year time limitation imposed by rule 3.851(d)(1), and none of the exceptions in rule 3.851(d)(2) apply. As we have explained, rule 3.851(d)(2)(A) provides an exception to the

- 16 -

one-year time limitation when the facts on which the claim is predicated were unknown to the defendant or counsel and could not have been ascertained by the exercise of due diligence. To be considered timely filed as newly discovered evidence, a claim must be filed within one year of the date upon which the claim became discoverable through due diligence. *Jimenez v. State*, 997 So. 2d 1056, 1064 (Fla. 2008). However, Kearse has failed to establish that he exercised due diligence in discovering his alleged intellectual disability.

Even accepting Kearse's argument that he could not have discovered his IQ score of 75 before the WAIS-5 was released, his claim is still untimely. Kearse's claim was not filed within one year of when his IQ score could have been discovered through the exercise of due diligence. According to Kearse, the WAIS-5 was released in October 2024. Assuming that is true, October 2024 would be the earliest date upon which Kearse's IQ score would have become discoverable through the exercise of due diligence. Thus, to satisfy rule 3.851(d)(2)(A), Kearse's claim would need to have been filed by October 2025 at the very latest. Therefore, Kearse's intellectual disability claim based on his February 2, 2026, IQ score

- 17 -

is untimely.[4]

Kearse's intellectual disability claim was also properly denied as procedurally barred. *See Rogers*, 409 So. 3d at 1263 ("[I]n an active [death] warrant case, a postconviction claim that could have been raised in a prior proceeding is procedurally barred."). Kearse has engaged in numerous postconviction proceedings over the last two and a half decades. Yet not at trial, on appeal, or in any of his state or federal postconviction proceedings has he raised a claim that he is intellectually disabled under *Atkins*.

Finally, summary denial was proper because Kearse failed to sufficiently plead the second prong—concurrent adaptive deficits—of the intellectual disability standard under section 921.137(1). A defendant must establish that he meets all three prongs of the standard to be found intellectually disabled. § 921.137(1), Fla. Stat. (2025); *Dufour v. State*, 69 So. 3d 235, 252-53 (Fla. 2011). Thus, even if Kearse's last-minute, post-warrant IQ test results

---

4. Kearse also argued that he showed "good cause" for filing his challenge now, under warrant, citing Florida Rule of Criminal Procedure 3.203(d)(4)(C) (2004). Without deciding this rule's applicability, Kearse's argument that he has "good cause" for his delay fails for the same reason it is untimely under rule 3.851.

were sufficient to raise a factual issue as to prong one of section 921.137(1) (they are not), Kearse is not entitled to relief because he has not alleged any current deficits in adaptive behavior. Under Florida law, the first prong must exist "concurrently" with the second prong, "which this Court has interpreted to mean that the two must exist 'at the same time.' " *Wright*, 256 So. 3d at 773 (quoting *Dufour*, 69 So. 3d at 248). Kearse has alleged only adaptive deficits that were present during his childhood, relating to his trouble with reading and mathematics, as well as being less emotionally developed than his peers at school. Kearse has not alleged any adaptive deficits that are present now, as would be required to satisfy prong two of section 921.137(1). *See Williams v. State*, 226 So. 3d 758, 771 (Fla. 2017) (finding that the data provided regarding Williams's adaptive deficits was "insufficient to satisfy the second prong of the intellectual disability test because it [did] not address Williams's *current* adaptive behavior" (emphasis added)); *State v. Jackson*, No. 3D22-1451, 2025 WL 3703628, at *6 (Fla. 3d DCA Dec. 22, 2025) (observing that "adaptive deficits must not only be present during childhood and adolescence, but also that impairment must be an ongoing issue"). Adaptive deficits exist

when at least one domain—conceptual, social, and/or practical—"is sufficiently impaired that ongoing support is needed in order for the person to perform adequately in one or more life settings at school, at work, at home, or in the community." *Wright*, 256 So. 3d at 773. But Kearse did not allege that any of his domains are impaired such that ongoing support is needed, nor did he allege that he is currently receiving support. Because Kearse did not allege current adaptive deficits, he failed to make out a facially sufficient claim that he is intellectually disabled under Florida law. Accordingly, the summary denial of this claim was proper.

### E. Motion to Declare Section 921.137(4)'s Standard of Proof for Establishing Intellectual Disability Unconstitutional

Kearse also argues the circuit court erred in denying his motion to declare unconstitutional the "clear and convincing evidence" standard of proof set forth in section 921.137(4), Florida Statutes, for establishing intellectual disability. Kearse argues that this standard of proof is too high, imposes a significant risk of an erroneous determination that a defendant is not intellectually disabled, and violates the Eighth Amendment and his right to due process. Because we have already determined that Kearse's

- 20 -

intellectual disability claim is untimely, procedurally barred, and legally insufficient as pleaded, we need not and will not consider the constitutionality of section 921.137(4)'s standard of proof for establishing intellectual disability. The circuit court did not err in denying his motion.

### F. Habeas Petition

In his habeas petition, Kearse argues that his death sentence is unconstitutional under the Eighth and Fourteenth Amendments of the U.S. Constitution and article I, section 17 of the Florida Constitution, because his age at the time of the murder, coupled with his significantly subaverage intellectual functioning, places him in a category of defendants exempt from execution under *Roper v. Simmons*, 543 U.S. 551 (2005) (holding that the Eighth Amendment prohibits execution of individuals who were under eighteen years of age at the time they committed their capital crime), and *Atkins*, 536 U.S. at 321. We disagree.

Kearse's claim is procedurally barred. In his initial postconviction motion, Kearse argued that he should be exempt from execution based on an interplay of *Roper* and *Atkins*, and our Court rejected that claim. *See Kearse*, 969 So. 2d at 991-92

(rejecting Kearse's *Atkins* claim because he presented evidence at his penalty phase that he was not intellectually disabled and no evidence to the contrary at his initial postconviction evidentiary hearing, and rejecting his *Roper* claim because he was over the age of eighteen at the time of the murder). Kearse cannot relitigate the issue now. *See Walls v. State*, 423 So. 3d 865, 876 (Fla.) ("Because Walls' habeas petition seeks only to relitigate an issue that was previously decided, we deny the petition."), *cert. denied*, No. 25-6357, 2025 WL 3674295 (U.S. Dec. 18, 2025); *Jones v. State*, 419 So. 3d 619, 629 (Fla.) (denying habeas petition raising intellectual disability claim because it was already litigated), *cert. denied*, 146 S. Ct. 79 (2025); *Knight v. State*, 923 So. 2d 387, 395 (Fla. 2005) ("[C]laims [that] were raised in [a] postconviction motion . . . cannot be relitigated in a habeas petition.").

Even if the claim were not procedurally barred, it is meritless, as we determined in his initial postconviction appeal. Kearse has not established that he is intellectually disabled such that he is among the class of persons categorically exempt from execution under *Atkins*, and *Roper* exempts from execution only those who were under eighteen years of age at the time of their capital crime.

This Court cannot extend the protections of *Roper* and *Atkins* to Kearse. As we explained in *Barwick v. State*, 361 So. 3d 785 (Fla. 2023):

> The conformity clause of article I, section 17 of the Florida Constitution provides that "[t]he prohibition against cruel or unusual punishment, and the prohibition against cruel and unusual punishment, shall be construed in conformity with decisions of the United States Supreme Court which interpret the prohibition against cruel and unusual punishment provided in the Eighth Amendment to the United States Constitution." This means that the Supreme Court's interpretation of the Eighth Amendment is both the floor and the ceiling for protection from cruel and unusual punishment in Florida, and this Court cannot interpret Florida's prohibition against cruel and unusual punishment to provide protection that the Supreme Court has decided is not afforded by the Eighth Amendment.
>
> Because the Supreme Court has interpreted the Eighth Amendment to limit the exemption from execution to those whose chronological age was less than eighteen years at the time of their crimes, this Court is bound by that interpretation and is precluded from interpreting Florida's prohibition against cruel and unusual punishment to exempt individuals eighteen or more years old from execution on the basis of their age at the time of their crimes.

*Id.* at 794 (alteration in original) (rejecting argument that *Roper* should be extended to Barwick because he was nineteen when he committed the murder); *see Stephens v. State*, 975 So. 2d 405, 427 (Fla. 2007) (rejecting claim that *Roper* barred execution of defendant

whose chronological age at the time of his crimes was twenty-three). Similarly, under the Eighth Amendment conformity clause in article I, section 17 of the Florida Constitution, this Court "also lacks the authority to extend *Atkins* to individuals who, like [Kearse], are not intellectually disabled."  *Barwick*, 361 So. 3d at 795 ("[T]he Supreme Court . . . has limited the categorical ban announced in *Atkins* so that individuals with mental deficiencies other than intellectual disability are outside the scope of that ban.").  Kearse is not categorically exempt from execution under *Roper*, *Atkins*, or a combination thereof, and we deny his petition.

## III.  CONCLUSION

For the foregoing reasons, we affirm the circuit court's order summarily denying Kearse's sixth successive motion for postconviction relief.  We also deny Kearse's petition for a writ of habeas corpus and his motions for a stay of execution.

No motion for rehearing will be entertained by this Court.  The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and COURIEL, GROSSHANS, FRANCIS, SASSO, and TANENBAUM, JJ., concur.
LABARGA, J., concurs in result.

- 24 -

An Appeal from the Circuit Court in and for St. Lucie County,
    Michael Carlton Heisey, Judge
    Case No. 561991CF000136AXXXXX
And an Original Proceeding – Habeas Corpus

Suzanne Keffer, Acting Capital Collateral Regional Counsel, Paul E. Kalil, Assistant Capital Collateral Regional Counsel, and Courtney M. Hammer, Staff Attorney, Southern Region, Fort Lauderdale, Florida,

        for Appellant/Petitioner

James Uthmeier, Attorney General, Tallahassee, Florida, Leslie T. Campbell, Senior Assistant Attorney General, and Lisa-Marie Lerner, Senior Assistant Attorney General, West Palm Beach, Florida,

        for Appellee/Respondent